467 P.2d 589

Jack A. EARL, Sr., Claimant-Respondent,

v.

SWIFT & COMPANY, Self-Insured
Defendant-Appellant.

Jack A. EARL, Sr., Claimant-Respondent,

v.

BOISE VALLEY PACKING COMPANY, Inc.,
and Argonaut-Northwest Insurance Com-
pany, Defendants-Appellants.

Nos. 10513, 10507.

Supreme Court of Idaho.

March 31, 1970.

Rehearings Denied April 24, 1970.

Coughlan, Imhoff, Christensen & Lynch,
Boise, for appellant, Swift & Co.

Moffatt, Thomas, Barrett & Blanton,
Boise, for defendants-appellants, Boise
Valley Packing Co. and Argonaut-North-
west Ins. Co.

Cosho & Humphrey, Boise, for respon-
dent.

SHEPARD, Justice.

This case is an appeal from an award by
the Industrial Accident Board. Claimant,

Jack A. Earl, Sr. (respondent herein), is a butcher and maintenance man who suffered a series of back injuries. Earl worked for Swift & Company, one of the appellants herein, from 1955 to February 14, 1968. He first injured his back during employment on February 25, 1959, while he was carrying an armature. The attending physician diagnosed that injury as a herniated disc at the L5–S1 level and recommended that a laminectomy be performed. Earl refused that recommended treatment and Swift paid all medical bills. Earl was additionally injured in 1959 when kicked by a cow and in 1963 when he lifted a heavy steel cover. Both instances resulted in back difficulty and the medical expenses therefrom were again paid by Swift.

Earl again injured his back on February 14, 1968, while he was pulling an electric motor from a truck. He received medical treatment and the diagnosis by the attending physician was that he had suffered an acute herniated disc at the L4–L5 level. The physician recommended a laminectomy, but Earl again refused to submit to the surgery. He was given conservative medical treatment and his condition was declared stable in June, 1968. The attending physician rated his physical impairment at 15% as compared to the loss of one leg at the hip. Earl and Swift entered into a compensation agreement, which was approved by the Industrial Accident Board and which provided that Swift would pay partial permanent disability based on the 15% impairment. Earl was then released from employment by Swift & Company.

Earl accepted employment with Boise Valley Packing Company and after only a day or two on the job injured his back on December 4, 1968, while lifting intestines into a barrel. He received medical attention and the attending physician diagnosed the injury as an acute herniated disc at the L4–L5 level. The physician recommended the performance of a myelogram and laminectomy. This time the advice was accepted by Earl, and the surgery was performed. Following the completion of the surgery, the attending physician estimated Earl's impairment to be 50%, as compared to a loss of the leg at the hip. Another orthopedic surgeon, who testified on behalf of the appellants, estimated the impairment to be only 30%. There is no dispute that Earl was clearly disabled from doing the type of work that he had performed prior to December 4, 1968.

Earl petitioned the Industrial Accident Board for a hearing against both Swift and Boise Valley Packing seeking an amendment in the compensation agreement he had previously signed with Swift on the grounds that his condition had changed and seeking to have Boise Valley Packing held responsible for compensation and benefits arising out of the December 4, 1968 accident. The claims were consolidated for hearing.

The Industrial Accident Board found Earl unable to work, but felt that his condition might improve and, therefore, made no determination of permanent partial or total disability, but instead retained jurisdiction over that question. Boise Valley Packing and its surety, Argonaut-Northwest Insurance Company, were held liable for all medical expenses incurred by Earl from December 4, 1968 until the date of the hearing, April 22, 1969, and also for total temporary disability compensation between December 4, 1968 and April 22, 1969. The Board initially dismissed Swift & Company and then reversed itself on the basis that Earl had suffered a change of condition within the meaning of I.C. § 72–607, and held Swift & Company liable for a portion of the total temporary disability compensation and medical or rehabilitative treatment expense from April 22, 1969 until Earl reached a stable condition or was surgically healed. Liability for such temporary compensation and other expenses following April 22, 1969 was assigned 50% each to Swift and Boise Valley Packing.

Both Swift and Boise Valley Packing have appealed the decision of the Industrial Accident Board. Swift contends, in essence, that it had finalized its relationship

with Earl and was released of all liability to him as a result of the compensation agreement entered into between it and Earl and approved by the Industrial Accident Board. It also claims that the injury was the result of a new accident of December 4, 1968, which bore no relationship to Swift. Boise Valley Packing, on the other hand, contends that the injury suffered by Earl on December 4, 1968 was merely ·the continuation of a pre-existing condition resulting from injuries for which it was not liable. If we were to accept the arguments of both Swift and Boise Valley Packing, the claimant herein, Earl, would be denied any compensation or benefits for what was admittedly an accident or series of accidents that were suffered while working at covered employment and from which he sustained at least temporary total disability and at least partial permanent disability, together with substantial medical and other expenses.

Error is assigned by Swift in the action of the Board in dismissing Swift as a defendant at the conclusion of the hearing and then at a later time reversing its decision and reinstating Swift as a defendant. Error is also assigned in the failure of the Board to fix the claimant's permanent partial disability, but retaining jurisdiction to do so at a later time. Neither of the ap-. pellants point out where they have been prejudiced in either action of the Board, nor are we cited authority to substantiate their theory.

As hereinabove indicated, the Board held that the claimant Earl had undergone a change of condition which justified modifying the agreement previously entered into by Earl and Swift. Swift complains of this finding of the Board and the conclusion that Swift was, therefore, liable for additional compensation and other expenses beyond those contained in the agreement between Earl and Swift.

■ Among other contentions, both Swift and Boise Valley Packing argue that the refusal of Earl to submit to surgery as recommended by the attending physician following the February, 1968 ˙injury militates against the Board's finding of change of condition. Swift suggests that a portion of I.C. § 72–401 supports its argument:

> "If an injured workman persists in insanitary, injurious or unreasonable practices which tend to imperil or retard his recovery, the board may, *in its discretion*, order the compensation of such workman to be suspended or reduced." (Emphasis supplied.)

Earl was first injured on February 25, 1959, and thereafter the attending physician recommended surgery in the form of a laminectomy. Claimant Earl refused and exercised his option to undergo conservative treatment rather than surgery. Thereafter for almost ten years, claimant Earl was able to and did work, although reinjuring his back three times up to and including the accident of February 14, 1968. We are unwilling, therefore, to conclude that Earl was persisting in insanitary, injurious or unreasonable practices, but rather believe that he was exercising reasonably good judgment under all those circumstances. The case cited by Swift is, therefore, not in point with the case at bar when it states:

> "* * * saying that an injured employee has the right to wilfully, arbitrarily and without reason or excuse, prolong his disability, destroy his usefulness to the state and society, deprive his dependents of support, and make himself a charge upon the community,"

or

> "* * * would be violative of the dictates of reason, common sense and good conscience, and would set the stamp of approval upon the conduct of the malingerer." French v. Employers Mutual Liability Insurance Co. of Wisconsin, 70 So.2d 179 (La.App.1954).

To focus merely on the Accident of February 14, 1968, and the recommendation for surgery following that accident is to ignore the fact that the claimant had gone through the experience before, had been offered surgery, had refused it, had indulged

in conservative treatment of the injury, and had largely recovered as a result thereof. To say that when faced with the same type of accident and obtaining the same recommendation he should suddenly have capitulated is to ask too much of this claimant. The court in Profitt v. De-Atley-Overman, Inc., 86 Idaho 207, 384 P. 2d 473 (1963), had before it the question of a claimant's refusal to submit to treatment for a back injury. The claimant had refused to submit to a myelogram and surgery if the myelogram disclosed the existence of a herniated intervertebral disc. The court therein found competent and substantial evidence in support of the Board's finding that claimant had unreasonably refused to submit to offered treatment, and the court stated:

> "The question of the unreasonableness of claimant's refusal to submit to diagnostic and conservative treatment is a question of fact to be determined by the Industrial Accident Board."

In the case at bar the Industrial Accident Board did find as a fact that the claimant herein was not unreasonable in refusing to submit to the recommended surgery. One of the expert witnesses testified as follows:

"Q As to disc injuries and where there is conservative treatment without a laminectomy, what type of recovery —what percentage do you ordinarily have. Of course, I'm relating back to this 1959 situation.

"A I'd say 80, probably 85 to 90 per cent improve without surgery. The other 10 to 15 per cent are unimproved or gradually get worse so that they require surgery."

On the other hand, the same witness testified that following a laminectomy approximately 75 to 80 per cent of the patients get a good recovery with a minimal disability, while in 10 to 15 per cent of the cases there is some noted improvement and in approximately 5 per cent of the cases there is no improvement or a worsening or degenerating condition following the surgery.

The same witness testified:

"A Well, there are obvious dangers with any type of operation. This [a laminectomy], of course, is a very major procedure both associated with the anesthetic that is given to begin with and the risk involved in operative intervention in an area associated with important nerves and the blood vessels in that area. The problems attending on that and the problems of infection. There is always a definite but small per cent of risk, plus the other problems, postoperative risk and complications that are attending to any surgery which is thrombophlebitis and blood clots and that sort of thing.

"Q Is this considered major surgery?

"A Yes.

"Q Is it always successful as far as improving a man's condition?

"A It's not always successful, no."

■ It is our opinion that the finding of the Board that the claimant herein was not unreasonable in refusing to submit to recommended surgery was based on substantial, although somewhat conflicting, evidence.

Swift assigns error, "The Board erred in its finding No. 5 when they held that the accident of December 4, 1968, was an aggravation of the injury which occurred February 14, 1968." Swift cites portions of the medical testimony to indicate that the Board erred and that the claimant had completely recovered from the accident of February, 1968, and the injuries of which claimant now complains were related solely and only to the accident of December 4, 1968. The Board in its finding No. 16 pointed out that the compensation agreement entered into between Swift and the claimant as a result of the injury of Feb-

ruary 14, 1968 contained the following specific provision:

"It is understood that the agreement of the parties and this proceeding is subject to the provisions of Section 72–607, Idaho Code, pertaining to Modification of Awards and Agreements."

This current proceeding was brought by the claimant insofar as Swift is concerned under the provisions of said statutory provision. The Board further found:

"The possibility or probability of an ultimate operation was known to Swift & Company when the compensation agreement was executed and that possibility or probability was not only discussed between the claimant and the employer's adjuster, but was embodied in the retention of the claimant's right to modification. The contemplated necessity for the operation actually arrived."

An expert witness further testified that a progressive muscle weakness, particularly on the right side of the spine, also resulted probably from the accident of February, 1968, and that the claimant continued to suffer from this up to the accident of December 4, 1968.

This same expert witness, questioned as to the etiology of the disc injury, stated:

"I believe that he had a combination of injuries. I believe his initial significant injury was in February producing a disc injury to the lower lumbar spine with involvement of the right leg; he had no involvement of the left leg at that time. He recovered moderately well, did not wish any further treatment, returned to work and was working; sustained a second injury which I believe is a significant aggravation or additional injury to the low back because he now has involvement and discomfort with weakness of his left leg from the December injury, December 4, 1968, which was new and different from what he had had before."

The same expert witness, testifying as to the necessity for the ultimate surgery, stated:

"Again, it was due to the injury to his back, both in February, 1968 and in December 4, 1968. I believe that both injuries played a role in the fact that he had a significant disc injury and lesions with compression of nerve roots."

The remaining assignments of error specified by Boise Valley Packing all go to the point that the Board erred in finding that the accident of December 4, 1968 had anything to do with claimant Earl's resultant injuries and, therefore, Boise Valley Packing should not have been assigned any portion of the liability and expenses as was done by the Board.

It is sufficient to say in regard to both Swift's and Boise Valley Packing's assertions that the evidence regarding the causative factor of claimant Earl's injuries was highly conflicting. Various portions of the testimony could be taken to justify Boise Valley Packing's contentions, or in the alternative Swift's contentions.

■ It is within the province of the Industrial Accident Board to determine the credibility of witnesses, the weight to be assigned their testimony, and the reasonable inferences to be drawn from the record as a whole. Diffendaffer v. Clifton, 91 Idaho 751, 430 P.2d 497 (1967). The Industrial Accident Board is an arbiter of disputed and conflicting facts and opinions of experts, as determination thereon, when substantially supported, may not be disturbed. Oliver v. Potlatch Forests, 73 Idaho 45, 245 P.2d 775 (1952). Apportionment of workmen's compensation is to be made as between successive industrial injuries and the ratio of apportionment is for the determination of the Industrial Accident Board, Wilson v. Gardner Associated, Inc., 91 Idaho 496, 426 P.2d 567 (1967), and when supported by substantial and competent, although conflicting, evidence will not be overturned since an appellate court must allow the Board certain latitude in making such apportionment.

■ The findings of the Board in the instant case and its allocation and appor-

tionment of liability for compensation and other expenses between Boise Valley Packing and Swift are based on substantial, although conflicting, evidence, and therefore the actions of the Board in this regard must be affirmed. As was said in Dawson v. Hartwick, 91 Idaho 561, 428 P.2d 480 (1967):

> "The Board is authorized to find causes of disability if attributable to more than one factor and to apportion disability between an industrial injury and pre-existing infirmity, or between successive industrial injuries. Such authority has been judicially interpreted to include apportionment of hospital, medical and kindred expenses. * * *

> "Because the Board is presumed by its experience to be able to judge causative factors of disability in a particular case, the rule has been established the Board must be allowed some degree of latitude in making an apportionment. Additionally, in accord with the standard procedure of appellate review, an apportionment will not be overturned when sustained by substantial and competent, although conflicting, evidence."

We find no error in the actions of the Industrial Accident Board, and the cause is thereby affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.