498 P.2d 1261

**Lowell G. LYNSKEY, Claimant-Appellant,**

**v.**

**Farris C. LIND, and Industrial Indemnity Co., Defendants-Respondents.**

**No. 11065.**

Supreme Court of Idaho.

June 27, 1972.

Ward E. Hower, Cascade, for claimant-appellant.

Robert L. Bilow, of Hawley, Troxell, Ennis & Hawley, Boise, for defendants-respondents.

McFADDEN, Justice.

In 1970 claimant-appellant Lowell G. Lynskey, a carpenter by trade, was employed by the agent of defendant-respondent Farris C. Lind to assist in and supervise the construction of a home in the mountains near Cascade. On November 30, 1970, Lynskey was injured while working on this project and thereafter timely filed a notice of injury and claim for compensation pursuant to the Idaho Workmen's Compensation Law, I.C. § 72–101 et seq. Lind and his surety, defendant-respondent Industrial Indemnity Company, denied liability.

The matter was heard by the Industrial Accident Board[1] which heard evidence limited to the issues of whether Lind was an exempt employer under the statute[2] and whether Lynskey was an independent contractor. The Board restricted its decision to the exemption issue and held that Lind had not had the house built for purposes of pecuniary gain and was therefore an exempt employer per I.C. § 72–105A(8). Lynskey appeals assigning as error the findings of the Board to the effect that the Cascade residence was not built for a purpose relating to Lind's business and that it was not built for pecuniary gain. He asserts these findings were not based on "substantial competent evidence."

In support of his contentions appellant points to the following facts contained in the record. The employer, Mr. Lind, heads a retail gasoline business which operates a chain of service stations. Desiring to build a mountain home Lind retained an independent building designer, one Mitchell, who was authorized to draw plans, purchase materials, and hire the workmen for Mr. Lind. Mitchell hired Lynskey on an hourly basis and allowed Lynskey to in turn hire several other laborers. Besides these men, Mitchell had other craftsmen work on specialized segments of the house. Mitchell testified that the other carpenters were paid by Lind through Lind's company's payroll office, receiving that company's paychecks which reflected the usual deductions. In conformity with Lynskey's request his paychecks had no deductions and his checks were written on Lind's personal, non-company account. It was undisputed that funds for all these paychecks came from Lind's personal resources and not from his business. The reason the oth-

---

1. Industrial Accident Board became the Industrial Commission on January 1, 1972. I.C. § 72–501.

2. I.C. § 72–101. "Employments covered.— This act shall apply to all public employment as defined in section 72–103 and to all private employment not expressly excepted by the provisions of section 72–105." For this provision after Jan. 1, 1972, see I.C. § 72–203. I.C. § 72–105A, in effect at the time Lynskey was injured, provides:

"Employments not covered.—None of the provisions of this act shall apply to the following employments, unless coverage thereof is elected as provided in section 72–105B:

1. * * *
* * * * *
8. Employment which is not carried on by the employer for the sake of pecuniary gain.
9. * * *."

Effective January 1, 1972, this section (72–105A(8)) is found in I.C. § 72–12(5).

Employment is further defined by I.C. § 72–1015: " 'Employment,' in the case of private employers, includes employment only in a trade or occupation which is carried on by the employer for the sake of a pecuniary gain. * * *"

After January 1, 1972, see I.C. § 72–204(4).

er payroll checks were processed through the business was for Lind's convenience.

■ Appellant maintains that based on these facts the Board erred in holding that Lind had no business-related purpose for building the house and that he did not build it for pecuniary gain. Coextensive with this contention, appellant argues that Lind, the employer, failed to present sufficient evidence to meet the burden of proof placed on one claiming exemption. Before going further, it should be noted that after the workman establishes the employer-employee relationship the employer does have the burden of proving his exemption under one or more of the categories listed in I.C. § 72–105A (*supra*, n. 2). Manning v. Win Her Stables, Inc., 91 Idaho 549, 428 P.2d 55 (1967); Collins v. Moyle, 83 Idaho 151, 358 P.2d 1035 (1961).

■ It is the conclusion of the Court that Lind adequately met his burden of proving exemption under § 72–105A(8), *supra*, and that the record supports the Board's findings and order. Of significance, the record establishes that Lind heads a retail gasoline company and that although the company's payroll office was involved, the house was built and paid for with the employer's personal funds. The record contains no suggestion that Lind's company builds residences as part of its operations or that Lind does so as a side business. Mitchell testified that Lind had the home built for his personal use and that of his family, all of whom now occupy the house. Indeed, Lynskey testified that the working plans showed the structure was a "summer house" for Lind. Lastly, the testimony indicated that the house is only used for family living and that Lind does not maintain a business office there. Appellant argues that Lind as a businessman built the house for some business motive such as business entertaining or as a second office; however there is no concrete evidence in the record which conflicts with the conclusion that the house is just a private residence. The Board, then, weighing this evidence, reasonably found therefrom that Lind did not build this house for pecuniary gain or for a business-related purpose. Those findings, supported as they are by substantial evidence, must stand. I.C. § 72–609(a);[3] Earl v. Swift & Co., 93 Idaho 546, 467 P.2d 589 (1970).

A survey of Idaho cases reveals that the question of whether an employer who hires a workman to build or repair his own residence must comply with the workmen's compensation law has not been definitively treated by this Court. The home repair case of Dillard v. Jones, 58 Idaho 273, 72 P.2d 705 (1937), did not decide this question, and is distinguishable as it relates to this case as there the employer was shown to be engaged in selling real property and had hired the workman who was later injured to repair a house intended for eventual sale.

Courts in other jurisdictions which have a non-pecuniary gain or other similar exemption in their workmen's compensation laws have decided cases helpful to the resolution of this appeal. For example, we are especially persuaded by the analysis in the factually analogous case of Clement v. Minning, 157 Md. 200, 145 A. 485 (1929), where the court affirmed the denial of compensation to an injured workman employed to help build the employer's private residence. The employer was the president of the "Cinder Block Corporation" and that company's product was utilized in building the house. Further, the house was later advertised by the company as an example of the virtues of cinder block construction. Maryland law contained a non-pecuniary gain exception for employers similar to the Idaho statute. The court, in holding against the workman, reasoned that the sole business or occupation engaged in by the employer for pecuniary gain was that of heading a cinder block manufacturing firm and that the building

---

3. After Jan. 1, 1972, see I.C. § 72–732(1).

of a home for himself using his company's product did not relate to this occupation.

Results similar to the Maryland decision have been reached in the jurisdictions where workmen's compensation laws contained exemptions for employers either not acting for pecuniary gain or not in the course of their trade, business, or occupation. Thus in Fontenot v. Travelers Ins. Co., 236 So.2d 889 (La.App.1970), aff'd 256 La. 871, 239 So.2d 364 (1970), Craine v. Department of Labor and Industries, 19 Wash.2d 75, 141 P.2d 129 (1943), Coffin v. Hook, 112 Ind.App. 549, 45 N.E.2d 369 (1942), and Empie v. Cossart, 259 App. Div. 941, 20 N.Y.S.2d 3 (1940), the courts refused to hold a homeowner-employer to be covered. The applicable authorities, then, hold contrary to appellant's position.

■ Appellant has put forward the additional contention that Lind as an employer cannot be separated from his public identity or role as a business executive and that in such a situation an employee like Lynskey might well misunderstand the nature of his employment vis-a-vis the workmen's compensation law. The essential argument is that because of Lind's public identity with his company, Lynskey reasonably did not distinguish between the two. Lynskey urges the compensation scheme be applied to him under these circumstances as a sound extension of the public policy underlying the workmen's compensation protection.

With this position we cannot agree as such a proposed extension runs contrary to the plain import of the non-pecuniary gain exemption. The rationale of the exemption is that an individual does lead a private, non-business life or role and when one undertakes to build a home or vacation home for himself it is typically a private, non-commercial project. The workmen's compensation act has as its subject employers, both commercial and governmental, who can be expected to pass on the costs in the goods and services they produce. Apparently the legislature has seen fit to only apply the scheme to employers in such

a position. *See Larson*, The Law of Workmen's Compensation, § 1.

We are not persuaded that a workman employed in these circumstances would naturally be misled into thinking he was being hired by the business organization with which his employer is identified or as part of the employer's business pursuits. At a minimum the record consistently reflects that Lynskey understood the house was being built for and by Lind as an individual, a factor which would seem to dispel any confusion.

In accordance with the views expressed herein, the order is affirmed. Costs to respondents.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.