706 P.2d 1344

**Robert M. NIGHERBON, Claimant-Appellant,**

**v.**

**RALPH E. FELLER TRUCKING, INC., Employer, and Argonaut Northwest Insurance Co., Surety, Defendants-Respondents.**

**No. 15383.**

Supreme Court of Idaho.

June 27, 1985.

Rehearing Denied Oct. 28, 1985.

Lynn M. Luker of Goicoechea Law Office, Boise, for claimant-appellant.

John W. Barrett and Michael G. McPeek of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents.

BAKES, Justice.

Robert Nigherbon appeals from an Industrial Commission order. Nigherbon was employed as a truck driver for Feller Trucking. On March 18, 1980, Nigherbon was injured when the truck he was driving hit a slick spot on the highway and went off the road. Although Nigherbon did not immediately consult a physician, two days later he was treated for injuries to his neck, shoulders and back. Subsequently, Nigherbon consulted several physicians for physical as well as mental problems. Following hearing, the Industrial Commission ruled that Nigherbon was entitled to benefits for a temporary total disability, and a permanent physical impairment of 29% of the whole man. The commission also ruled that a severe depression which Nigherbon suffered from did not relate to the accident and that Nigherbon, therefore, was not entitled to an award of medical benefits for treatment of this depression or for disability benefits based on this depression. In this appeal, Nigherbon contends that his depression was the result of the industrial accident and that the commission erred in refusing to continue temporary disability payments based upon the depression. Nigherbon also contends that the commission erred in finding only a 29% permanent partial disability. He argues that, had the commission fully considered the evidence, non-medical factors would have mandated an increase in his disability rating. We affirm the Industrial Commission's order.

As the Industrial Commission's comprehensive 33-page order indicates, the commission considered evidence from three psychiatrists, one psychologist, three general practitioners, three orthopedic surgeons, and a neurologist before rendering its decision. The medical evidence was conflicting. However, the Industrial Commission's findings of fact are supported by competent, though conflicting evidence. *Lampe v. Zamzow's, Inc.* 102 Idaho 126, 626 P.2d 782 (1981). Accordingly, we will not disturb the commission's finding that Nigherbon's depression was unrelated to the accident.

Nigherbon argues that because all of the medical evidence was in documentary form this Court has a duty to independently review the evidence. We disagree. Regardless of whether witnesses have personally appeared before the Industrial Commission, this Court's review is restricted to determining whether findings of fact by the Industrial Commission are supported by substantial competent evidence. *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978).

Nor do we find the commission's statement, "Psychiatrists can more accurately diagnose mental problems and the cause thereof," to be grounds for reversal. Even if such a statement were an inaccurate evaluation of the comparative competence of psychiatrists *vis-a-vis* other medical specialists in evaluating mental problems, a complete reading of the Industrial

Commission's 33-page order indicates that the commission carefully weighed all of the conflicting evidence before coming to its conclusion "that the claimant's depression is not caused by his accident and injuries." As the commission further explained, this conclusion was reached "primarily because of the considerable lapse of time between the accident and the claimant's depressive state and the fact that the claimant's serious periods of depression in October, 1981, and June, 1982, immediately followed experiences which were personally distressing and difficult for the claimant."

 Finally, we find no merit in Nigherbon's contention that the commission erred in awarding benefits based upon the finding that Nigherbon suffered only a 29% permanent impairment. After consideration of all of the evidence, the commission found:

"The physical restrictions associated with the Claimant's neck and shoulder injuries are not sufficient to preclude him from the labor market. The evidence establishes that there are a number of employment opportunities which the Claimant could pursue, as indicated by the opinions of the Commission's Rehabilitation Consultants. That the Claimant has not pursued employment and continues to be unemployed is due primarily to the effects of depression, for which he continues to be treated. However, since the depression is not the result of his accident and injury, he is not entitled to additional income benefits for total disability subsequent to the May 1982 release by Dr. Schneider. Furthermore, the evidence does not establish that there are any non-medical factors which preexisted the Claimant's accident and injury in March 1980 which would increase the Claimant's permanent disability above the permanent impairment ratings determined in this decision."

1. The Commission adopted the proposed findings and conclusions of the referee who conducted the hearing; therefore, we speak in terms of the Commission's decision. We have before us the same cold record which the Commission reviewed and then adopted. Where the

Having fully reviewed the record, we find the commission's conclusion to be supported by substantial competent evidence. *See Snyder v. Burl Lange Co.*, 109 Idaho 167, 706 P.2d 56 (1985); *Lampe v. Zamzow's, Inc., supra.*

Accordingly, the Industrial Commission's order is affirmed in all respects.

DONALDSON, C.J., and SHEPARD, J., concur.

BISTLINE, Justice, dissenting.

On March 18, 1980, Robert Nigherbon injured his neck and back in an accident while driving a truck for Feller Trucking. Mr. Nigherbon also became severely depressed, and an issue the Commission had before it was whether Mr. Nigherbon's depression was work-caused, thereby making it a compensable disability under Idaho's Worker's Compensation Act. Conflicting evidence was presented to the Commission: Mr. Nigherbon introduced testimony in deposition form from his two treating therapists, Dr. Hurst and Dr. Adams, that his depression was work-related. Defendants introduced testimony from two experts, Dr. Holt and Dr. Kruzich, also in deposition form, that Mr. Nigherbon's depression was not work-related.

The Commission[1] concluded that Mr. Nigherbon's depression was not work-related, and, therefore, denied any benefits relating to his depression. In choosing to accept the opinion testimony of defendants' experts, the Commission stated that it was "inclined to the view that psychiatrists can more accurately diagnose mental problems and the cause thereof [than psychologists]."

The Commission made this statement in reference to the fact that Mr. Nigherbon's primary treating therapist, Dr. Hurst, is a psychologist with a Ph.D. in psychology,

*sole* issue presented is the interpretation and application of medical testimony we should defer to the expertise of the Commission. *See Small v. Jacklin*, 109 Idaho 541, 709 P.2d 114 (Sup.Ct. No. 14994, issued May 29, 1985) (Bistline, J., dissenting).

whereas defendants' experts are psychiatrists.[2]

Although the weight to be given medical evidence rests with the Commission, *Smith v. Payette County,* 105 Idaho 618, 621, 671 P.2d 1081, 1084 (1983), and its determination as to weight has been said to be conclusive on appeal unless it is clearly erroneous, *Houser v. Southern Idaho Pipe & Steel, Inc.,* 103 Idaho 441, 445, 649 P.2d 1197, 1201 (1982),[3] here, the placing of greater weight on the testimony of the defendants' experts rather than the claimant's experts, premised on the basis that defendants' experts are psychiatrists while Mr. Nigherbon's expert was a psychologist, is not supported as a matter of law.

For purposes of Idaho's Worker's Compensation Act, a "physician" is defined in the following way:

> "Physician" means medical physicians and surgeons, ophthalmologists, otorhinolaryngologists, dentists, osteopaths, osteopathic physicians and surgeons, optometrists, podiatrists, chiropractic physicians and *members of any other healing profession licensed or authorized by the statutes of this state to practice such profession within the scope of their practice as defined by the statutes of this state* and as authorized by their licenses. I.C. § 72–102(20) (emphasis added).

It is readily apparent that psychologists fall within this definition. I.C. § 54–2301 *et seq.* regulates the licensing of psychologists. Subsequent sections in that chapter state that the practice of psychology affects "the public health," I.C. § 54–2301, and that psychology includes working with and treating mental problems. I.C. § 54–2302(f). It cannot be denied that psychologists licensed in Idaho to treat mental health problems are "physicians" for purposes of Idaho's Worker's Compensation Act.[4]

Thus, where a mental problem is psychologically and not biologically based, as is true in this case,[5] there is nothing in the law, for worker's compensation purposes, that lends credence to the Commission's broad, all-encompassing statement, which improperly permitted the discounting of Dr. Hurst's testimony. *There is no law and there is no record* to support the Commission's view that "psychiatrists can more accurately diagnose mental problems and the cause thereof [than psychologists]." Thus, there being no basis in this record for the Commission's statement, this Court should not affirm the Commission's ruling that the mental depression was not work-related.

In so stating I do not wish to be understood as saying that the Commission in some instances may not find sound reasons for giving greater weight to a psychiatrist's rather than a psychologist's testimony. Clearly, it can. Conversely, in some instances, it may give greater weight to a psychologist's rather than a psychiatrist's testimony. But some basis for doing so must be stated, and that basis must bear some reasonable relationship to the special circumstances and facts of the particular case.

---

2. Dr. Adams, who also testified that Mr. Nigherbon's depression is work-related, is a medical doctor who concentrates 70 percent of his practice to the field of psychiatry.

3. *See* footnote 1, *supra.* As a condition to giving deference to the Commission, this Court should at the least require that the Commission's determination was not influenced by improper considerations.

4. There is no problem here with the fact that Mr. Nigherbon's claim involves a mental problem. Idaho's Worker's Compensation Act covers both mental and physical problems caused in the work place. In *Hartley v. Miller-Stephan,* 107 Idaho 688, 692 P.2d 332 (1984), this Court stated: "[P]sychological disorders should be compensated [under Idaho's Worker's Compensation Act] if they are proximately caused by the job environment and if they result in loss of earning capacity." *Id.* at 690, 692 P.2d at 334.

5. The surety-defendant's own psychiatrist, Dr. Kruzich, testified that the probable cause of Mr. Nigherbon's depression *"is the various stresses and strains which he is experiencing as opposed to his depression being due to a bipolar or a biochemical type of depression...."* (Emphasis added.)

The record does not tell us how much reliance the Commission placed on the stance it here took when evaluating the evidence concerning the cause of Mr. Nigherbon's depression. Noting the rule long established in Idaho that the testimony of a claimant's treating physician ought to be given at least as great if not greater weight than that of the physician or physicians who examined him only for purposes of trial, *Graves v. American Smelting & Refining Co.*, 87 Idaho 451, 456, 394 P.2d 290, 293 (1964); *Stralovich v. Sunshine Mining Co.*, 68 Idaho 524, 533, 201 P.2d 106, 112 (1948), and that here the dispute is between Mr. Nigherbon's treating physicians and defendants' experts,[6] it is manifestly clear that this Court, at the least, should reverse and remand to the Commission for reconsideration of the cause of Mr. Nigherbon's depression.

HUNTLEY, J., concurs.

**6.** It is notable that Dr. Hurst alone saw Mr. Nigherbon 60 times while the defendants' experts saw him only a total of five times between them.