793 P.2d 1238

**David L. BROOKS, Employee,**

and

**Associated Foods, Employer,**

and

**American Insurance Company, and Fireman's Fund, Surety, Claimants–Respondents,**

v.

**STANDARD FIRE INSURANCE COMPANY, and Aetna Casualty & Surety, Surety, Defendants–Appellants.**

No. 17666.

Supreme Court of Idaho.

June 7, 1990.

Imhoff & Lynch, Boise, for defendants-appellants. Alan R. Gardner, argued.

Quane, Smith, Howard & Hull, Boise, for claimants-respondents. Alan K. Hull, argued.

BOYLE, Justice.

In this worker's compensation case we are called upon to determine whether the Industrial Commission has authority and jurisdiction to hear and order reimbursement between carriers for compensation benefits paid to a claimant.

American Insurance Company and Fireman's Fund (hereafter Fireman's Fund) provided worker's compensation insurance coverage to Associated Foods prior to June 1, 1984. After June 1, 1984, worker's compensation insurance coverage was provided to Associated Foods by defendants Standard Fire Insurance Company and Aetna Casualty & Surety (hereafter Aetna). David Brooks, an employee of Associated Foods, suffered his initial employment injury in November, 1983, while Fireman's was providing coverage. While Aetna was providing coverage, Brooks suffered a reoccurrence of the same injury. Fireman's Fund paid Brooks' worker's compensation benefits for his injuries and made a claim against Aetna for reimbursement of benefits paid as a consequence of the injury Brooks suffered during the period of Aetna's coverage. Fireman's Fund requested a hearing before the Industrial Commission to determine whether it was entitled to reimbursement for worker's compensation benefits paid to Brooks after November of 1984. In its Findings of Fact, Conclusions of Law and Order, the Commission ordered Aetna to pay Fireman's Fund the sum of $26,083.07.

David Brooks worked for Associated Foods as a truck driver. In the summer of 1983, Brooks injured his right wrist in a non-employment related motorcycle accident for which he did not seek medical attention. On November 11, 1983, Brooks slipped at work and injured his right wrist. Several days later Brooks went to the Minor Emergency Center where his wrist was x-rayed and he was referred to Stanley Moss, M.D. Brooks reported the injury to his supervisor on November 18, 1983, and continued working. On November 15, 1983, Dr. Moss examined Brooks and diagnosed the injury as a fractured right wrist. In a written report, Dr. Moss stated that he would have to presume that the motorcycle

accident caused the fracture initially, however the fall in November of 1983 caused further displacement and symptoms from the preexisting non-union fracture. When Dr. Moss once again x-rayed the wrist on December 8, 1983, there was an indication that the wrist was healing.

On February 23, 1984, Dr. Moss removed the cast and x-rayed Brooks' wrist. The fracture appeared at that time to be healing and the cast was not replaced. Dr. Moss examined Brooks on March 22, 1984 and advised him to return in six months. Brooks continued working as a truck driver and testified that several times during the course of loading and unloading trucks, he experienced severe sharp pain in his right wrist. Brooks testified that the pain in his wrist was much worse and more constant in the late summer of 1984.

On November 27, 1984, Brooks returned to Dr. Moss for the six-month checkup. X-rays taken at that time revealed that Brooks had refractured his right wrist since the prior x-rays had been taken in March, 1984. Dr. Moss testified before the Industrial Commission that the new fracture was a culmination of minor injuries.

Brooks reported the results of this doctor visit to his employer and continued working. On January 11, 1985, Dr. Moss performed surgery on Brooks' wrist and stabilized the bone by using a graft. Brooks was required to wear a cast until May 24, 1985, at which time the cast was removed and a splint placed on the wrist.

On March 16, 1986, Dr. Moss released Brooks to return to work at Associated Foods. Dr. Moss testified that from January 11, 1985, until March 16, 1986, Brooks was totally disabled due to the wrist fracture. Dr. Moss testified that the 1983 motorcycle accident, the November, 1983 fracture, and the 1984 fracture were equally one-third responsible for the eventual bone graft surgery and the resultant twenty percent permanent impairment.

At the hearing before the Industrial Commission, an adjustor with Fireman's

Fund testified that Fireman's Fund paid all medical bills incurred by Brooks for injury to his right wrist from November, 1983 through the time of the hearing. Fireman's adjuster also testified that she sent a letter dated January 14, 1984, and copies of Dr. Moss's medical reports to Aetna advising that Brooks' injury had occurred after Aetna became the surety for Associated Foods. Fireman's adjuster testified that on January 25, 1985, she advised the Industrial Commission by letter that she was paying benefits to Brooks on behalf of the employer, but was reserving the right to request a hearing before the Industrial Commission to determine the responsible surety. The adjuster for Aetna testified that she received the January letter from Fireman's Fund, that shortly thereafter she investigated the claim and that Aetna denied the claim.

On January 30, 1987, Fireman's Fund filed an Application for Hearing requesting the Industrial Commission to determine the responsibility of the sureties. Aetna filed a motion to dismiss on May 26, 1987, on grounds that no Notice and Claim for Benefits was filed within the time specified by I.C. § 72–701. On January 26, 1987, Aetna filed another Motion to Dismiss for lack of standing and lack of subject matter jurisdiction. The Commission denied both motions and found in favor of Fireman's Fund.

The Commission determined 1) that it had subject matter jurisdiction over a claim between sureties involving a claim for contribution or reimbursement; 2) that the payment of worker's compensation benefits by Fireman's Fund tolled the statute of limitations as to a claim for reimbursement from Aetna; and 3) that Aetna was responsible for all medical expenses incurred and temporary total disability benefits paid after the discovery of claimant's refracture in November of 1984.

On appeal, Aetna urges this Court to rule 1) that the Industrial Commission does not have subject matter jurisdiction over a claim for reimbursement between sureties;

2) that the Industrial Commission erred in finding that Brooks suffered an "accident" as defined by I.C. § 72–102(14)(b) and in holding Aetna responsible for all costs and medical treatment provided as a result of the 1984 refracture; 3) that the Commission erred in finding that Fireman's Fund has an equitable right of contribution against Aetna; and 4) that the Commission erred in ruling that Fireman's Fund's claim was not barred by the statute of limitations.

## I.

### *Jurisdiction*

Aetna argues that the Industrial Commission does not have subject matter jurisdiction over a claim for reimbursement or contribution brought by a surety against another surety.

In *Anderson v. Gailey*, 97 Idaho 813, 555 P.2d 144 (1976), this Court considered the issue of jurisdiction between the courts and the Industrial Commission.

> Although the Industrial Commission and the district court have mutually exclusive jurisdiction for the award of benefits to an injured claimant or damages to an injured plaintiff, they have concurrent jurisdiction to determine whether they have jurisdiction to consider the claim or hear the case.

97 Idaho at 824, 555 P.2d at 155. Idaho Code § 72–201 provides that all actions and claims which involve issues relating to a worker's injury are within the exclusive jurisdiction of the Industrial Commission. In addition, the legislature has specifically granted jurisdiction over all disputes and questions arising under the worker's compensation laws to the Industrial Commission in order to provide "sure and certain relief" for injured workers. Idaho Code § 72–707 states:

> *All questions arising under this law,* if not settled by agreement or stipulation of the interested parties with the approval of the Commission, except as otherwise herein provided, *shall be deter-*

*mined by the Commission.* (Emphasis added.)

In *Anderson v. Gailey*, this Court also adopted the rule that the decision of the tribunal in which the question of jurisdiction is first filed shall prevail and as to that issue the ruling is res judicata. The question of which of the two sureties is responsible for claimant's injury is a "question arising under this law" as provided in I.C. § 72–707, and is a proper case to be determined by the Industrial Commission. Unless error is shown on appeal, the Industrial Commission's ruling is res judicata as to the issue of jurisdiction. We hold that the Industrial Commission had jurisdiction to hear and rule on the claim for reimbursement and contribution between sureties.

## II.

### *Findings of Commission Supported by Record*

Aetna contends that the Commission erred in finding that Brooks suffered an "accident" as defined by I.C. § 72–102 during the summer of 1984 and consequently Aetna argues it cannot be held responsible for the injury. Aetna argues that where a preexisting compensable condition is exacerbated or aggravated by some subsequent minor event or incident, it will ordinarily be held that the subsequent reinjury is a direct, probable and compensable consequence of the original condition. *See* Larson, *Law of Workmen's Compensation,* § 13.11(a) (1986).

Idaho Code § 72–102(14)(b) states: Accident means an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs and which can be reasonably located as to time when and place where it occurred, causing an injury.

This Court has held that under the foregoing definition of an accident, a claimant does not need to show that he suffered an

injury at a specific time and at a specific place. *Hazen v. General Store*, 111 Idaho 972, 729 P.2d 1035 (1986), *reh. den.* (1986); *Wynn v. J.R. Simplot Co.*, 105 Idaho 102, 666 P.2d 629 (1983). In *Wynn*, this Court held that where a claimant is injured while working at his usual and ordinary labor and the stress of that work overcomes the resistance of his body, that injury is compensable even though claimant may have been predisposed to such injury. In the present case, Dr. Moss found that the stress fracture to Brooks' wrist was the result of a series of micro traumas which occurred while Brooks was loading and unloading trucks. There is sufficient competent, substantial evidence of claimant's second job related injury in the record to sustain the Commission's findings. It is well established in this jurisdiction that where findings of the Industrial Commission are supported by substantial, competent evidence, those findings will not be disturbed on appeal. *Graham v. Larry Donohoe Logging*, 103 Idaho 824, 654 P.2d 1377 (1982). If the Commission's findings are supported by substantial and competent evidence, it does not matter whether this Court would reach the same conclusion. *Nigherbon v. Ralph E. Feller Trucking, Inc.*, 109 Idaho 233, 706 P.2d 1344 (1985); *Lopez v. Amalgamated Sugar Co.*, 107 Idaho 590, 691 P.2d 1205 (1984). The evaluation of the evidence and the findings based on that evidence are matters for the Industrial Commission and will not be disturbed on appeal unless clearly erroneous. *Nycum v. Triangle Dairy Co.*, 109 Idaho 858, 712 P.2d 559 (1985); *Facer v. E.R. Steed Equip. Co.*, 95 Idaho 608, 514 P.2d 841 (1973); *Martin Estate v. Woods*, 94 Idaho 870, 499 P.2d 569 (1972); *Lynskey v. Lind*, 94 Idaho 788, 498 P.2d 1261 (1972).

█ Aetna further argues that the responsibility for medical expenses and disability benefits should be apportioned between the parties in equal one-thirds based on Dr. Moss' testimony. The Commission must be presumed by its experience to be able to judge the causative factors in a particular case, and be allowed a degree of latitude in making an apportionment. *Clark v. Brennan Construction Co.*, 84 Idaho 384, 372 P.2d 761 (1962). In *Clark*, the claimant suffered from a non-compensable pre-existing back injury, and two subsequent back injuries involving two separate employers and their respective sureties. Following the second injury, the Industrial Accident Board apportioned total temporary disability on the basis of fifty percent to each employer and surety, and one-third of the hospital and medical expenses to each employer, with the remaining one-third of such expenses to the claimant, finding it was related to the pre-existing back infirmity. In *Clark* this Court recognized that presentation of evidence of the cause, origin and extent of disability was dependent upon testimony from expert witnesses and that it was within the province of the Board to find the causes of disability and to apportion those causes between an industrial injury and a pre-existing injury as well as between successive industrial injuries. Likewise, this Court in *Wilson v. Gardner Associated, Inc.*, 91 Idaho 496, 426 P.2d 567 (1967), held:

> Subsequent to enactment of this provision, [the predecessor to the current Idaho Code § 72–405] this Court has recognized the apportionment of compensation is to be made as between disability caused by or resulting from industrial accident and disability caused by or resulting from pre-existing injury, disease or condition residual from previous injury, and that the ratio of apportionment is for the Board's determination.

91 Idaho at 502, 426 P.2d at 573.

█ Apportionment of disability is a factual issue, therefore the Commission is free to accept or reject medical evidence and testimony. *Id.* When apportionment is supported by substantial and competent, although conflicting evidence, it will not be overturned on appeal. *Nigherbon v. Ralph E. Feller Trucking, Inc.*, 109 Idaho 233, 706 P.2d 1344 (1985); *Lopez v. Amalgamated Sugar Co.*, 107 Idaho 590, 691 P.2d 1205 (1984); *Earl v. Swift & Co.*, 93 Idaho 546, 467 P.2d 589 (1970).

Our review of the record reveals sufficient competent, albeit conflicting, evidence to support the Commission's findings. The Commission weighed the conflicting testimony regarding the injury and concluded that a subsequent work-related injury or series of injuries did occur in the summer of 1984. The testimony of Brooks and his wife supports a finding that an injury occurred because his pain became worse in August of 1984. The Industrial Commission's decision expressly states that it found the injury to be work-related because of Brooks' testimony that he experienced severe pain in his wrist during the course of loading and unloading trucks. In addition, Dr. Moss testified that the fracture which had been previously united had suffered a stress fracture and had separated again at the previous fracture site. Dr. Moss also testified that the fracture separation occurred after claimant had returned to work and had suffered several minor injuries to the wrist while unloading trucks. The testimony of claimant, his wife, and Dr. Moss constitutes substantial, competent evidence of an injury in the summer of 1984, supporting the Commission's finding.

### III.

### *Right of Contribution and Reimbursement*

 Aetna contends that the Commission erred in finding that Fireman's Fund has an equitable right of contribution against Aetna for the payment of compensation benefits made to David Brooks. Aetna argues that Fireman's Fund had an adequate remedy at law under I.C. § 72–313, and that it is self-evident that where a party has an adequate remedy at law, equity jurisdiction cannot be invoked to afford a remedy. I.C. § 72–313 provides:

Whenever any claim is presented and the claimant's right to compensation is not in issue, but the issue of liability is raised as between an employer and a surety or between two (2) or more employers or sureties, the commission shall order payment of compensation to be made immediately by one or more of such employers or sureties. The commission may order any such employer or surety to deposit the amount of the award or to give such security thereof as may be deemed satisfactory. When the issue if finally resolved, an employer or surety held not liable shall be reimbursed for any such payments by the employer or surety held liable and any deposit or security so made shall be returned.

The legislative purpose behind I.C. § 72–313 is to ensure that injured claimants receive immediate compensation whenever the employers or sureties involved contest liability between them. In the instant case, claimant Brooks has received compensation from Fireman's Fund and I.C. § 72–313 does not provide an adequate remedy at law for that surety. Aetna's reliance on I.C. § 72–313 is misplaced and does not foreclose or prevent Fireman's Fund from seeking reimbursement.

### IV.

### *Laches Does Not Bar Fireman's Fund Reimbursement*

 Aetna further contends that Fireman's Fund is barred from seeking reimbursement under the doctrine of laches. One who has unreasonably delayed in the pursuit of an action to the prejudice or detriment of the other will be denied equitable relief. *Bowler v. Board of Trustees*, 101 Idaho 537, 617 P.2d 841 (1980). This Court has previously addressed laches and discussed the elements required to be proven in order to establish that defense.

Whether or not a party is guilty of laches primarily is a question of fact and therefore its determination is within the province of the trial court. (Citations omitted.) The defense of laches is a creation of equity and is a specie of equitable estoppel. The necessary elements of laches are: (1) defendant's invasion of

plaintiff's rights, (2) delay in asserting plaintiff's rights, the plaintiff having had notice and an opportunity to institute a suit, (3) lack of knowledge by defendant that plaintiff would assert his rights, and (4) injury or prejudice to defendant in event relief is accorded to plaintiff or the suit is not held to be barred. Lapse of time, although an important element, is not alone controlling in determining the applicability of the defense of laches, unless the party claiming laches was injured or placed at a disadvantage by such delay. (Citations omitted.)

*Huppert v. Wolford,* 91 Idaho 249, 257, 420 P.2d 11, 19 (1966).

As early as January 25, 1985, Aetna had knowledge that Fireman's Fund intended to assert its rights against Aetna. In response to this notice, Aetna established a file and investigated the claim. The adjustor for Fireman's Fund, testified that she sent a letter dated January 14, 1984, and copies of Dr. Moss's medical reports to Aetna advising that Brooks' injury had occurred after Aetna became the surety for Associated Foods. The adjuster for Aetna testified that she received the January 14, 1984 letter from Fireman's Fund and that she had in fact investigated the claim prior to denying it.

The deposition of Aetna's adjustor clearly reveals that Aetna was not prejudiced by any alleged lack of notice. The following deposition testimony was placed into the hearing record before the Industrial Commission and is illustrative of Aetna's knowledge of this claim at an early stage of the claim procedure.

Q. After receiving [the letter from Fireman's Fund dated January 14, 1985] did you set up a claim file?

A. Yes we did.

Q. The claim file is reflected in Exhibit 13. That's your letter to Grace?

A. Yes.

Q. Did you institute investigation of this claim following the receipt to [that letter]?

A. I did.

Q. What did you do to investigate the claim?

A. I ordered the Commission's records. I took a statement from Mr. Brooks. I contacted Associated Foods.

Q. Did you feel you were able to get all the information pertinent to the claim that was known at the time?

A. Yes.

* * * * * *

Q. Turning now to Exhibit 12, that is a letter to Grace Cole sent by you on March 13, 1985?

A. Yes.

Q. At that time you understood that she was asking Aetna to come in and pay part of the benefits?

A. Yes.

Q. You had no doubt what she wanted in that case—in this case?

A. No, I knew.

Q. You also reviewed Dr. Moss' report?

A. Yes.

Q. My letter to Dr. Moss?

A. Yes.

Q. By this time you had taken Mr. Brooks' statement?

A. I think I had. I cannot be absolutely positive.

Q. At least shortly thereafter?

A. Yes.

Q. And turning to Exhibit 13, you wrote to Grace Cole, did you not, on March 29, 1985?

A. I did.

Q. And informed you had investigated the injury?

A. I did.

Q. Informed her you were declining payment is that right?

A. That's right.

(Depo. of Laura Cole, claim adjustor for Aetna).

Aetna cannot argue that it lacked knowledge or notice early in the claim procedure that Fireman's Fund would assert its right to seek contribution. The circumstances of this case simply do not disclose any injury or prejudice to Aetna as a result of the Industrial Commission's consideration of Fireman's Fund's claim, nor that Aetna has been placed at a disadvantage in defending this claim by the passage of time. We hold that Fireman's Fund's claim is not barred by the doctrine of laches.

## V.

### Statute of Limitations Does Not Bar Claim

 Aetna next argues that the Commission erred in ruling that Fireman's Fund's claim was not barred by the statute of limitations. We disagree and hold that Fireman's claim for reimbursement is not barred by the statute of limitations contained in I.C. § 72–701 which states:

No proceedings under this law shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable but not later than sixty (60) days after the happening thereof, and unless a claim for compensation with respect thereto shall have been made within one (1) year after the date of the accident.... Such notice and such claim may be made by any person claiming to be entitled to compensation or by someone on his behalf. If payments or compensation have been made voluntarily or if an application requesting a hearing has been filed with the commission, the making of a claim within said period shall not be required.

Idaho Code § 72–702 specifies that the notice to be given under I.C. § 72–701 shall be in writing and shall contain such other pertinent information sufficient to apprise the employer of the facts and circumstances of the accident. Although Brooks testified that he told his supervisor about the refracture in November of 1984, Aetna contends that this oral notice is not sufficient. Idaho Code § 72–704 states in pertinent part,

Want of notice or delay in giving notice shall not be a bar to proceedings under this law if it is shown that the employer, his agent or representative had knowledge of the injury or occupational disease or that the employer has not been prejudiced by such delay or want of notice.

As required by I.C. § 72–701, "notice" is to be given to the employer and there is no additional requirement that notice be given to the surety. It is well established that notice to the employer is deemed to be notice to the surety. *Facer v. E.R. Steed Equip. Co.*, 95 Idaho 608, 514 P.2d 841 (1973).

In *Facer*, this Court held that where one surety paid compensation for injuries for which the claimant's employer admitted liability, claimant's employer through its surety tolled the statute of limitations and bound the second surety. In *Facer* the Court was interpreting I.C. § 72–706, which states in pertinent part:

When payments of compensation have been made and thereafter discontinued, the claimant shall have five (5) years from the date of the accident causing the injury or date of first manifestation of an occupational disease, or, if compensation is discontinued more than four (4) years from the date of the accident causing the injury or the date of first manifestation of an occupational disease, within (1) year from the date of the last payment of compensation, within which to make and file with the commission an application requesting a hearing for further compensation and award.

 In the instant case, payment of benefits by Fireman's Fund tolled the statute of limitations, and Aetna is bound for statute of limitation purposes by the voluntary payment of worker's compensation benefits by Fireman's Fund.

The order and decision of the Industrial Commission awarding reimbursement and

**1074**

contribution to Fireman's Fund are affirmed. Costs to respondent. No attorney fees awarded on appeal.

BAKES, C.J., and JOHNSON and McDEVITT, JJ., concur.

BISTLINE, Justice, specially concurring.

I concur in the majority's disposition of this case, but write separately to suggest to the Court, members of the bar, and interested readers that this case has overruled at least two prior opinions of the Idaho Supreme Court. As is too often the custom in this jurisdiction, the majority denies the existence of the contrary precedent by completely ignoring it. However, I believe that as a sworn caretaker of the laws of this State, I cannot be so carefree with what until now was the law of Idaho. Members of the bar as well as the citizens of Idaho look to this Court for guidance, and we cannot allow ourselves the luxury of contrary and conflicting but unchallenged precedents to exist side by side.

The precedent implicitly targeted by the majority for the jurisprudential junk heap is *Martin v. Robert W. Woods Lumber Co.*, 90 Idaho 105, 408 P.2d 474 (1965), and the authority cited therein. In *Martin*, this Court affirmed a decision by the Industrial Accident Board. The Board had decided that it did not have jurisdiction to determine whether a certain surety, Argonaut Insurance Company, was liable for an injury that occurred at the Woods Lumber Company. The Court phrased the issue in this manner:

> Thus the issue is clearly put for this court: Does the Industrial Accident Board have jurisdiction, once a claim is made to the Board by an employee seeking a workmen's compensation award, to decide a collateral issue of law of the existence or nonexistence of a contract of insurance between an employer and an insurance company, ...?

*Martin*, 90 Idaho at 106–07, 408 P.2d at 475.

Similarly, in today's opinion the majority frames the issue before the Court by asking a similar question:

> In this worker's compensation case we are called upon to determine whether the Industrial Commission has authority and jurisdiction to hear and order reimbursement between carriers for compensation benefits paid to a claimant.

117 Idaho at 1067, 793 P.2d at 1239. In both today's opinion and in *Martin*, the issue raised was the same. That is, does the quasi-judicial body set up by the legislature to "adjudicate" workers' compensation claims have the jurisdictional power to determine issues related to the workers' compensation claim? In *Martin*, the answer was no; in today's opinion the answer is yes.

The facts of *Martin* may be quickly stated. The surety had, in the past, automatically renewed coverage to the employer each year. The only contingency on this arrangement was that the employer promptly pay the premium. But when an employee was injured a few hours after the old policy had expired, the surety refused to renew the employer's coverage. The Industrial Accident Board ruled that the surety's term bond had indeed expired before the accident occurred, and that no notice of that expiration was required of the surety. The Board held the uninsured employer liable to the employee. However, the Board declined to go beyond that ruling, stating that it had no jurisdiction over the contractual relations between employers and their sureties. The Board then dismissed Argonaut Insurance from the proceedings.

The Court handled this case three times, and issued three separate opinions. The first time the Court affirmed the decision of the Board. Quoting from *Thompson v. Liberty National Insurance Co.*, 78 Idaho 381, 304 P.2d 910 (1956), the Court held that the liability of Argonaut Insurance was a contract question, determinable only by a court of competent jurisdiction. *Martin v. Robert W. Woods Lumber Co.*, 90 Idaho 105, 107, 408 P.2d 474, 475 (1965)

(*Martin I*). The Court did not consider the Board a court of competent jurisdiction.

The second time the Court reversed the dismissal by the district court of a declaratory judgment action brought to determine the liability of the surety, and remanded the cause to the district court. The district court had dismissed the action because of the appeal then pending from the Industrial Accident Board to the Idaho Supreme Court. *Martin v. Argonaut Ins. Co.*, 90 Idaho 107, 408 P.2d 475 (1965) (*Martin II*). The third and final opinion of the Court reviewed the district court's actions on remand. The district court held Argonaut Insurance liable on an estoppel theory, and this Court affirmed, with directions to add an amount for attorneys' fees to the judgment. *Martin v. Argonaut Ins. Co.*, 91 Idaho 885, 434 P.2d 103 (1967) (*Martin III*).

The case precedent that is now of no authority includes just the first of the three *Martin* cases, *Martin I*, and the authority cited therein, *i.e.*, *Thompson v. Liberty Insurance*. In *Thompson* the Court remarked that:

> The controversy here is not one in which the injured workman is in anywise interested. The liability having been paid by the employer prior to the Industrial Accident Board hearing, the contract relationship of the employer and the surety was no longer a subject of controversy for the Board to determine.

78 Idaho at 384, 304 P.2d at 911. For that reason the *Martin I* Court held that the issue of whether coverage had been properly cancelled by the surety prior to the accident was not an issue for the Board to determine. Today's opinion changes all that. The majority opinion informs us that Fireman's Fund paid all benefits to the injured employee and was now seeking reimbursement from Aetna. Just as in *Thompson* and *Martin I*, "[t]he controversy here is not one in which the injured workman is in anywise interested." Nonetheless, today's opinion finally places in the hands of the Industrial Commission the power it should have had all along to adjudicate the issues intertwined with a workers' compensation claim.

I now call on my fellow justices, judges, and members of the bar in the worthwhile enterprise of ferreting out contrary and conflicting doctrines and precedents. As an attorney intimately involved in the *Martin* litigation, I could not help but recall the history of that case and its holding. But there are many other such cases, conflicting with more recent opinions, which are in effect snakes in the high grass of jurisprudence. Such snakes cannot not be tolerated, unless the "luxury" of picking and choosing among contrary and conflicting precedents is something this Court and practicing attorneys in this state truly enjoy.