727 P.2d 1217

Mike **MALUEG, Claimant-Respondent,**

v.

**PIERSON ENTERPRISES, Employer,**

and

**Employers Insurance of Wausau, Surety, Defendants-Appellants.**

**No. 16201.**

Supreme Court of Idaho.

Oct. 20, 1986.

David W. Cantrill and Frank P. Kotyk (argued), Cantrill, Skinner, Sullivan & King, Boise, for defendants-appellants.

Paul C. Keeton, Lewiston, for claimant-respondent.

SHEPARD, Justice.

This is an appeal by an employer and its surety from a determination by the Industrial Commission refusing to terminate previously awarded disability benefits although claimant was attending college and had subsequently been released for light duty work. We affirm the decision of the Commission.

Claimant Malueg, after completing his freshman year at the University of Idaho, began employment with Pierson Enterprises on May 28, 1983, as a log bumper. That work consisted of dressing logs and requires a physically strong and agile person. It is not disputed that claimant had suffered an industrial accident on August 15, 1983, suffering damage to his right knee.

Dr. Kaltenbaugh, an orthopedic surgeon, performed cartilage and ligament repair. The day following surgery Malueg began twice-a-week physical therapy which continued through November or December of 1983. Malueg also wore a leg brace with a movable joint at the knee until the end of November 1983. During that post-operative period Malueg's progression seemed normal, although he did sustain some pain and problems with weight bearing. Nevertheless, Malueg returned as a full-time student to the University of Idaho on the 28th day of August, 1983.

Although there is some dispute in the record, Malueg was released by Dr. Kaltenbaugh's office as available for "light duty work," and on December 12, 1983 the employer telephoned Malueg offering him an office job beginning the next morning. Malueg declined the offer, indicating that he was in the middle of final exams, but offered to start such work on Monday, December 18. After Malueg declined the offer the employer hired others to do the office work. Malueg had no other offer of light duty work and he sought no such work.

During January and February of 1984, although Malueg engaged in some sports, he continued to experience pain in his knee and continued treatment from Dr. Kaltenbaugh. A second surgery was performed on Malueg's knee on May 21, 1984, and his knee was immobilized in a cast until July 5, 1984.

Thereafter Malueg was again released from treatment as able to "do office work" and the employer again offered Malueg a full-time light duty office job beginning June 18, 1984. Malueg again refused the employer's offer because he was enrolled at summer school at the University of Idaho and the employer/surety discontinued payment of disability benefits.

Following hearing before the Industrial Commission, it concluded that Malueg was entitled to total temporary disability benefits from the date of the accident, August 15, 1983, to June 18, 1984. The Commission found that the employer's job offer of December 12, 1983 was unreasonable since it gave the claimant less than 24 hours to conclude his affairs and report to work.

The employer/surety appeal from the decision of the Commission, arguing that total temporary disability benefits should terminate when Malueg returned to school in August of 1983 since thereby he voluntarily removed himself from the work force. Alternatively, employer/surety argue that disability benefits should have been terminated at the date Malueg was able to perform light duty work.

The evidence in this case is not in any substantial controversy. Claimant was a college student and took full-time employment during the summer months, but intended to return to college that fall. He sustained damage through an industrial accident, received benefits therefor, and the healing process continued through the second surgery and until June 1984.

Based on these facts, the employer/surety argue that albeit Malueg was still undergoing the healing process, disability bene-

fits are intended to compensate only for actual wage losses, Malueg voluntarily left the work force, and hence has suffered no wage loss. Malueg, on the other hand, argues that his eligibility for disability benefits is a medical fact question.

I.C. § 72–102(8) provides:

(8) "Disability," for purposes of determining total or partial temporary disability income benefits, means a decrease in wage-earning capacity due to injury or occupational disease, as such capacity is affected by the medical factor of physical impairment, and by pertinent nonmedical factors as provided in section 72–430, Idaho Code.

It is beyond question here that by reason of an industrial accident Malueg suffered physical impairment which would have prevented employment at least until December 1983. Hence, he suffered a decrease in wage earning *capacity* and thus a disability. The fact that he enrolled in college rather than sitting at home during the healing process is, we deem, of no relevance.

In *International Paper Company v. McGoogan*, 255 Ark. 1025, 504 S.W.2d 739 (1974), the court held that a claimant who sustained an industrial accident is entitled to total temporary disability benefits even though he was a full-time university student and did not look for work during the recovery period. In a like case the court in *Underwood v. Terminal-Frouge Builders*, 128 So.2d 605 (Fla.1961) stated:

Neither do we think it should be held that because a claimant, during a period of disability, becomes a full-time student he should be precluded from receiving compensation, if he is in fact disabled. Such a rule would not only be unsupported by any provision of Workmen's Compensation Law, it would, we believe, also violate the spirit and intent of the Workmen's Compensation law by penalizing a claimant for attempting through the furtherance of his education to limit the effect of his disability.

Also, in *Dooley v. NYS Bronx Children's Psychiatric Hospital*, 56 A.D.2d 680, 391 N.Y.S.2d 526 (1977) the court held

that enrollment in school full time during a recovery period from a physical impairment does not constitute voluntary removal from the work force. Thus, benefits were not terminated.

In the instant case employer/surety offered no evidence that when Malueg returned to school in the fall of 1983 that he did not continue to be physically impaired. The medical testimony before the Commission reflects Malueg's physical impairment at that time and that the healing period had not ended.

Employer/surety argue, alternatively, that if Malueg's benefits did not terminate when he returned to school, the benefits in any event should have been terminated when Malueg was able to return to light duty office work and the employer offered him an opportunity to do so.

A "light duty release" can vary in meaning, dependent upon the original work. In the instant case, however, such would not contemplate work involving heavy lifting or strenuous physical activity. Since in this case the Commission found that Malueg was able to perform light duty work as of November 22, the issue becomes whether the release for light duty work in the absence of evidence of available light duty work is a sufficient basis for automatic termination of benefits.

We agree with the following test set forth by the Commission:

In the opinion of the commission, once a claimant establishes by medical evidence that he is still within the period of recovery from the original industrial accident, he is entitled to total temporary disability benefits unless and until evidence is presented that he has been medically released for light work *and* that (1) his former employer has made a reasonable and legitimate offer of employment to him which he is capable of performing under the terms of his light work release and which employment is likely to continue throughout his period of recovery *or* that (2) there is employment available in the general labor market which Claimant

has a reasonable opportunity of securing and which employment is consistent with the terms of his light duty work release.

The Commission found that the employer's offer of light duty work to Malueg on December 12, 1983 was unreasonable. That finding is amply supported by the evidence and will not be disturbed on appeal. I.C. §§ 72–724 and 72–732; *Lopez v. Amalgamated Sugar Co.*, 107 Idaho 590, 691 P.2d 1205 (1984); *Nigherbon v. Ralph E. Feller Trucking, Inc.*, 109 Idaho 233, 706 P.2d 1344 (1985). Employer/surety also argue that Malueg's benefits should be terminated because he did not seek other light duty employment. Whereas here claimant has been awarded disability benefits and an employer seeks a change in the status of a claimant, the burden of proof rests with the employer. Here there is no evidence indicating that any other employment consistent with Malueg's light duty work release did in fact exist, or that Malueg was offered suitable employment and refused the offer.

We affirm the decision of the Commission that Malueg was entitled to total temporary disability benefits from August 15, 1983, the date of his accident, to June 18, 1984, the date of his second release for light duty work.

On appeal to this Court Malueg requests attorney fees pursuant to I.C. § 72–804. The Commission below refused to award Malueg attorney fees on the basis that the issues of entitlement to benefits upon returning to school as a full-time student, and the significance of a light duty work release during the period of recovery had never been addressed by this Court. We agree with the action of the Commission in refusing to award attorney fees below, and for the same reasons decline to award attorney fees on appeal.

The decision of the Commission is affirmed; costs to respondent.

DONALDSON, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.