9 P.3d 524

Randy PERKINS, Plaintiff–Respondent,

v.

CROMAN, INC., Employer, and Liberty Northwest Ins. Corp., Surety, Defendants–Appellants.

No. 25525.

Supreme Court of Idaho, Boise, February 2000 Term.

Aug. 22, 2000.

722

Alan K. Hull, Boise, for appellants.

Robert L. Jackson, Nampa, for respondent.

SILAK, Justice.

Appeal from an Idaho Industrial Commission (the Commission) decision, granting claimant total temporary disability benefits where claimant left suitable light duty work in Idaho to seek treatment and rehabilitation in residence of California. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

**A. Factual Background.**

Respondent, Randy Perkins (Perkins) was a resident of Yreka, California and was hired by appellant, Croman, Inc. (Croman) as a logging choke setter in 1995. Perkins' employment required him to travel and work throughout Oregon, Washington and Idaho.

On July 26, 1996, while working for Croman near Idaho City, Idaho, Perkins sustained an injury to his right knee when a creek bank gave way beneath him. After initial treatment for his injuries, Perkins was excused from work and referred to orthopedist, Dr. Mark Meier, (Dr. Meier) for continued treatment. Perkins was prescribed physical therapy and released by Dr. Meier for light duty work. On August 8, 1996, Croman offered Perkins a light duty work position in a guard shack at its facility in Boise, Idaho. Perkins took the position.

On September 18, 1996, Dr. Meier informed Perkins that he might require surgical treatment for his injury. Perkins subsequently informed Croman's surety, Liberty Northwest Insurance Co. (Liberty), that he wished to finish his therapy and undergo any necessary surgery at or near his home in

Yreka, California. On October 3, 1996, Perkins left work at the guard shack prior to the end of his shift alleging that the work was mentally unsuitable and that he had been wrongfully accused of sexual harassment and drinking on the job. On October 16, 1996, Dr. Meier informed Perkins that surgery was required for his knee. Perkins subsequently moved to Yreka, California.

In December 1996, Perkins was referred to Dr. Earl Peterson (Dr. Peterson) in Medford, Oregon after negotiating with Liberty to find a mutually acceptable doctor near Yreka. Perkins began treatment with Dr. Peterson, and his care was later transferred to Dr. David Galt (Dr. Galt). After a period of physical therapy and release for light duty work, Perkins underwent knee surgery in March 1997. Following his surgery, Perkins continued to receive medical treatment and undergo physical therapy. Disability benefits were paid to Perkins from the date of his surgery until June 11, 1997.

In December 1997, Dr. Galt determined Perkins to be medically stable and released him from further medical treatment with modified work restrictions. Continued complications with his knee resulted in Perkins being assessed as having a nine percent impairment of the whole person in March 1998.

### B. Procedural Background.

On August 6, 1997, Perkins filed a worker's compensation claim with Croman and Liberty. Croman and Liberty responded, denying that Perkins' condition was caused by an accident arising out of, and in the course of his employment. Perkins amended his complaint and requested a determination of his disability rating in addition to his need for retraining. Croman and Liberty responded by denying that the injury arose out of and in the course of Perkins' employment.

Following a full hearing on the matter, the Commission concluded that Perkins was entitled to receive total temporary disability benefits from the time surgery was recommended on October 16, 1996 until his surgery on March 19, 1997, and from June 10, 1997, through December 18, 1997, the period prior to his medical release which was not covered by appellants.

Appellants Croman and Liberty appeal.

## II.

### ISSUES ON APPEAL

A. Whether the Commission erred in ruling that Perkins was entitled to total temporary disability benefits for the periods of October 16, 1996 through March 19, 1997 and June 10, 1997 through December 18, 1997.

B. Whether the Commission set forth its findings with the specificity required for meaningful appellate review.

C. Whether the Commission's conclusions of law and fact were supported by substantial evidence.

## III.

### ISSUES ON CROSS-APPEAL

Whether respondent is entitled to attorney fees on appeal pursuant to I.A.R. 11.1.

## IV.

### STANDARD OF REVIEW

In reviewing an appeal from the Industrial Commission, this Court will uphold the Commission's findings if they are supported by substantial and competent evidence, but will freely review issues of law. *See Phinney v. Shoshone Medical Center,* 131 Idaho 529, 531, 960 P.2d 1258, 1260 (1998); *see also, Tonahill v. LeGrand Johnson Const. Co.,* 131 Idaho 737, 739, 963 P.2d 1174, 1176 (1998); *Mancilla v. Greg,* 131 Idaho 685, 687, 963 P.2d 368, 370 (1998).

In *Idaho State Insurance Fund v. Hunnicutt,* 110 Idaho 257, 715 P.2d 927 (1985), this Court described the appropriate test for substantial and competent evidence for the purposes of judicial review of an administrative agency's action as follows:

The "substantial evidence rule" is said to be a "middle position" which precludes a *de novo* hearing but which none the less requires a serious review which goes beyond the mere ascertainment of procedural

regularity. Such a review requires more than a mere "scintilla" of evidence in support of the agency's determination, though "something less than the weight of the evidence." "Put simply," we wrote, "the substantial evidence rule requires a court to determine 'whether [the agency's] findings of fact are reasonable.'"

110 Idaho at 260, 715 P.2d at 930 (citations omitted).

## V.

## ANALYSIS

**A. The Commission Did Not Err In Finding Perkins Was Entitled To Total Temporary Disability Benefits For The Periods Of October 16, 1996 Through March 19, 1997, And June 10, 1997 Through December 18, 1997.**

Appellants assert that Perkins is not entitled to temporary disability benefits for the periods October 16, 1996 through March 19, 1997, and June 10, 1997 through December 18, 1997 because suitable light duty work had been made available to Perkins in Idaho, and he refused to take it. Specifically, appellants argue that the Industrial Commission erred by imposing a "new burden" on appellants by requiring demonstration of the availability of suitable light duty work elsewhere after Perkins moved from Idaho to Yreka. Appellants assert that pursuant to section 72–403 of the Idaho Code, there is no duty to provide alternative or additional light duty work offers where a claimant has refused an initial offer of work.

In essence, the issue presented by appellants is whether the Idaho worker's compensation law requires an employer to demonstrate the availability of suitable light duty work elsewhere after an initial reasonable offer of employment has been made, but where the claimant has relocated, making acceptance of the offered job impossible. It is noted that this issue has not yet been addressed by the Idaho Supreme Court.

Section 72–403 of the Idaho Code provides:

If an injured employee refuses or unreasonably fails to seek physically or mentally suitable work, or refuses or unreasonably fails or neglects to work after such suitable work is offered to, procured by or secured for the employee, the injured employee shall not be entitled to temporary disability benefits during the period of such refusal or failure.

I.C. § 72–403.

In *Malueg v. Pierson Enterprises,* 111 Idaho 789, 727 P.2d 1217 (1986), this Court pronounced the test applicable to finding whether an injured claimant is entitled to total temporary disability benefits under Idaho worker's compensation law. In *Malueg,* the Court stated:

[O]nce a claimant establishes by medical evidence that he is still within the period of recovery from the original industrial accident, he is entitled to total temporary disability benefits unless and until evidence is presented that he has been medically released for light work *and* that (1) his former employer has made a reasonable and legitimate offer of employment to him which he is capable of performing under the terms of his light work release and which employment is likely to continue throughout his period of recovery *or* that (2) there is employment available in the general labor market which claimant has a reasonable opportunity of securing and which employment is consistent with the terms of his light duty work release.

111 Idaho at 791–92, 727 P.2d at 1219–20 (emphasis in original).

■ A review of I.C. § 72–403 and this Court's holding in *Malueg* indicates that once a claimant establishes that he is within the period of recovery for a work-related accident, the burden shifts to the employer to show that a reasonable offer for employment has been made, or that employment is generally available in the market. *See Swanson v. Kraft, Inc.,* 116 Idaho 315, 320, 775 P.2d 629, 634 (1989); *Malueg,* 111 Idaho at 791–92, 727 P.2d at 1219–20. A claimant is not entitled to temporary disability benefits during the period he refuses such reasonable employment. *See* I.C. § 72–403.

■ Implicit, however, is the notion that when the offered employment becomes *un-*

*reasonable,* a claimant who is still within the period of recovery may again receive temporary disability benefits if his burden is met. The burden then shifts to the employer to show that a reasonable offer of employment has been subsequently made or that suitable employment is generally available in the market. Whether offered or procured employment is reasonable is a question of fact, and this Court will uphold the Commission's findings if they are supported by substantial and competent evidence.

It is clear in this case, and it is not argued otherwise, that Perkins is not entitled to disability benefits for the period of October 3, 1996 through October 16, 1996 because he quit a suitable position offered to him by Croman at the guard shack in Idaho. At the time, Perkins was living in Idaho, and the position at the Boise guard shack was determined by the Commission to be a reasonable offer of employment given his disabilities.

■ The Commission found that once Perkins was diagnosed on October 16, 1996 as requiring surgery, it was reasonable for him to move back to his home in Yreka for the surgery and follow-up treatment. After Perkins moved to Yreka, Croman's offer and procurement of a position at the guard shack in Idaho became unreasonable. Because Perkins had shown he was still within the period of recovery for his work-related injuries, he was entitled to temporary disability benefits under the Idaho worker's compensation law. Thereafter, Croman had the burden of offering or proving availability of suitable work. The Commission found that Croman had not met its burden and granted Perkins' worker's compensation entitlements.

Accordingly, we hold that the Commission did not commit error when it placed the burden on appellants to demonstrate that after Perkins moved to Yreka for surgery and treatment, a reasonable offer for employment had been made or that suitable employment was generally available in the market.

### B. The Commission Set Forth Findings Sufficient For A Meaningful Appellate Review.

■ Appellants assert that the Commission has not set forth findings sufficient to enable this Court to review the basis upon which the Commission determined Perkins was entitled to benefits on October 16, 1996. Appellants argue that the Commission's failure to provide adequate findings makes it impossible to determine whether its decision was supported by substantial evidence.

The Idaho worker's compensation law does not specifically mandate requirements for the Commission's findings. Section 72–708 of the Idaho Code states that "[p]rocess and procedure under this law shall be as summary and simple as reasonably may be and as far as possible in accordance with the rules of equity." However, in *Weygint v. J.R. Simplot Co.,* 123 Idaho 200, 846 P.2d 202 (1993), this Court noted that the Commission must provide sufficient rationale for its decision so that the existence of substantial, competent evidence, and determination as to whether the rationale is in accord with existing legal principles is capable of being reviewed on appeal. *See Weygint,* 123 Idaho at 204, 846 P.2d at 206.

Our review of the Commission's order indicates that it contains adequate rationale for a meaningful appellate review. The Commission's findings state that Perkins was not entitled to receive disability benefits from the time he quit his position at the guard shack on October 3, 1996 until October 16, 1996 when his doctor determined he required surgery. The Commission's findings also indicate that Perkins' desire to undergo his surgery and recovery in Yreka was reasonable and that upon returning to Yreka in October 1996, Perkins was unable to find suitable work and was not offered suitable work by Croman until December of that same year. Based upon the foregoing, it is reasonable to conclude that Croman's offer of employment became unreasonable after Perkins was diagnosed as requiring surgery and moved to Yreka. Because Perkins had shown he was still within the period of recovery from his work-related accident, he was again entitled to disability benefits until Croman made an additional, reasonable offer of employment, or proved that suitable employment was available in the general labor market.

Accordingly, we hold that the Commission's findings are sufficient to provide a meaningful basis for appellate review.

## C. The Commission's Findings Were Supported By Substantial Evidence.

Appellants assert that the Commission's findings were not supported by substantial, competent evidence. In particular, appellants assert that the Commission's determination that Perkins was again entitled to receive benefits on October 16, 1996, after he had been informed that surgery for his knee was required, was not supported by substantial evidence.

In reviewing a decision from the Industrial Commission in a worker's compensation case, all facts and inferences are viewed in light most favorable to party who prevailed before the Commission. *See Taylor v. Soran Restaurant, Inc.*, 131 Idaho 525, 527, 960 P.2d 1254, 1256 (1998). For purposes of reviewing the Commission's findings of fact, substantial and competent evidence is more than a scintilla of proof, but less than a preponderance; in short, it is relevant evidence, which a reasonable mind might accept to support a conclusion. *See Tupper v. State Farm Ins.*, 131 Idaho 724, 727, 963 P.2d 1161, 1164 (1998).

Based upon the foregoing discussion regarding whether the Commission set forth adequate findings, we hold that the Commission's findings of fact were supported by substantial and competent evidence.

## D. Respondent Is Not Entitled To Attorney Fees Pursuant To I.A.R. 11.1.

Perkins requests attorney fees as a sanction for frivolous appeal. Perkins argues that pursuant to Idaho Appellate Rule 11.1, this Court should award reasonable attorney fees because appellants simply did not want to pay benefits awarded by the Commission, and there was no legal basis for appellants' appeal.

Idaho Appellate Rule 11.1 states in relevant part:

The signature of [a] ... party constitutes a certificate that the ... party has read the notice of appeal, petition, motion, brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law

....

...

If the notice of appeal, petition, motion, brief, or other document is signed in violation of this rule, the court ... shall impose ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses ... including a reasonable attorney's fee.

I.A.R. 11.1.

Because this case presented a question of first impression to this Court, we hold that appellants are not subject to the sanctions of I.A.R. 11.1. No alternate basis for an award of attorney fees was requested.

## VI.

## CONCLUSION

We hold that: 1) the Commission properly placed the burden on appellants to show that a reasonable offer for employment had been made, or that employment was generally available in the market after Perkins relocated to his home in Yreka, California; 2) the Commission set forth findings sufficient to enable this Court to review the basis upon which it determined Perkins was entitled to benefits after October 16, 1996; 3) the findings of the Commission are supported by substantial and competent evidence; and 4) appellants are not subject to sanctions under I.A.R. 11.1. No attorney fees are awarded. Costs to respondent.

Chief Justice TROUT and Justice WALTERS concur.

Justice SCHROEDER, dissenting.

I respectfully dissent from that portion of the opinion which allows Perkins temporary disability benefits for the period from October 16, 1996, through March 19, 1997.

The Court correctly notes that "once a claimant establishes that he is within the period of recovery for a work-related accident, the burden shifts to the employer to show that a reasonable offer for employment has been made ...." That is what the employer did in this case. The Commission determined that the position at the Boise guard shack was a reasonable offer of employment. Perkins left that employment for reasons unrelated to his desire to have surgery and recuperate in California. The employer met its burden to provide suitable employment. The Court, however, finds that the employer acquired a new burden to provide other suitable employment when Perkins decided to move back to California for surgery. There would be little impact to the Court's decision if Perkins had returned to California and actually had surgery within a reasonable time. That did not happen. Perkins did not have surgery for over five months after he left the suitable employment that had been provided by his employer.

Had the Commission and the Court determined that it was reasonable for Perkins to return to California for surgery and limited the payment of benefits for a reasonable time for the surgery to take place there would be nothing in the opinion to question. That would be the same as if Perkins had remained in this area and taken a short period away from work prior to surgery. But requiring the employer to continue paying benefits when the employee leaves suitable employment and waits five months for surgery is unreasonable and contrary to the provisions of I.C. § 72–403 and the standard set forth in *Malueg v. Pierson Enterprises*, 111 Idaho 789, 727 P.2d 1217 (1986). The employer made a reasonable and legitimate offer of employment to Perkins which he was capable of performing under the terms of the light duty release. That employment was likely to continue until the time of the surgery. The employer met its burden. Perkins left that employment for reasons unrelated to his health. He moved away from the area where he had been employed and did not obtain surgery within a reasonable time. Benefits for the period from October 16, 1996, through March 19, 1997, should be denied or limited to a reasonable time for the surgery to take place.

Justice KIDWELL concurs in dissent.