963 P.2d 1161

**Barbara TUPPER, Claimant–Appellant,**

v.

**STATE FARM INSURANCE, Employer, and State Farm Fire & Casualty Company, Surety, Defendants–Respondents.**

No. 23623.

Supreme Court of Idaho,
Coeur d'Alene, April 1998 Term.

Aug. 5, 1998.

Michael J. Vrable, Hayden, for Claimant-Appellant.

Quane, Smith, Howard & Hull, Boise, for Defendants-Respondents. Alan K. Hull argued.

SILAK, Justice.

Appellant Barbara Tupper (Tupper) appeals from a decision of the Industrial Com-

mission (Commission) denying worker's compensation benefits for severe pain she suffered due to answering the telephone in her job as a phone receptionist for respondent State Farm Insurance (State Farm). We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

On November 2, 1995, Tupper filed a worker's compensation complaint with the Commission seeking medical benefits for pain to her left shoulder and upper back due to the repetitive use of her left arm while answering the telephone for her employer State Farm.

The parties agreed to submit the matter upon stipulated facts. Thus, in lieu of a hearing, a Stipulation of Facts was submitted to the Commission as part of the briefing and exhibits submitted by the parties. The Stipulation stated in pertinent part as follows:

[C]laimant is seeking benefits for a condition to her neck. In the Form 1, which is the Notice of Injury and Claim for Benefits filed on October 18, 1994, it is indicated that Claimant has pain in her neck and shoulders. On October 17, 1994, Claimant was seen by Dr. Patricia Moran ... for a wellness exam. At the time of the exam, [Tupper] complained of having intermittent pain in her left medial scapular area. She indicated to Dr. Moran that she'd had this intermittently for two years and responded to massage by her husband. Dr. Moran advised her to seek physical therapy for the neck. She reported to Dr. Moran on December 1, 1994 that she was better, as she was wearing a headset. She also advised Dr. Moran that the physical therapy was not helping and Dr. Moran suggested massage.

According to a later report written by Dr. Moran on March 24, 1995, Claimant was having intermittent pain in her left medial scapular area. On approximately November 11, 1994, she began having increasingly severe pain and noticed it when picking up the phone. She was referred to physical therapy. Dr. Moran noted that the treatment was physical therapy and use of a headset to eliminate work-related aggravation of the pain. Dr. Moran noted on March 24, 1995, that Claimant had significant improvement.

. . .

Claimant missed no time from work. She continued in her regular duties. With the use of a headset, her symptoms have basically resolved. Claimant does not allege that she suffered a specific accident and injury as defined by the Idaho Worker's Compensation Act, that being that she did not suffer from a specific unexpected, untoward event which can be localized as to time when it occurs or place where it occurred. Rather, she noted a gradual onset of symptoms which became worse in November of 1994.

Claimant first reported her condition to her Employer on November 18, 1994. She is employed as a phone receptionist.

In January 1997, the hearing officer submitted Findings of Fact, Conclusions of Law and a Proposed Order, which the Commission adopted. The Commission then issued its decision denying Tupper's claim on the basis that (1) she had failed to prove she suffered an injury caused by an accident arising out of and in the course of her employment; and (2) she was not entitled to benefits under an occupational disease theory because she had not been disabled from work as required by Idaho Code section 72–437. Tupper appeals.

## II.

## ISSUES ON APPEAL

1. Whether Tupper is entitled to benefits under the worker's compensation laws.

2. Whether I.C. § 72–437 and I.C. § 72–102(21)(Supp.1998) violate Tupper's right to equal protection treatment under the law guaranteed by Art. I, §§ 2 and 13 of the Idaho Constitution and the Fourteenth Amendment to the United States Constitution.

The respondents raise the following additional issue on appeal:

1. Whether respondents are entitled to attorney fees on appeal pursuant to I.A.R. 11.1 and/or I.A.R. 41.

### III.

### ANALYSIS

#### A. Standard Of Review.

The Commission's findings of fact will not be disturbed on appeal if they are supported by substantial and competent evidence. *Reedy v. M.H. King Co.,* 128 Idaho 896, 899, 920 P.2d 915, 918 (1996). Where conflicting evidence is presented that is supported by substantial and competent evidence, the findings of the Commission must be sustained on appeal regardless of whether this Court may have reached a different conclusion. *Id.; Soto v. J.R. Simplot,* 126 Idaho 536, 539, 887 P.2d 1043, 1046 (1994). Substantial and competent evidence is "more than a scintilla of proof, but less than a preponderance. In short, it is relevant evidence which a reasonable mind might accept to support a conclusion." *Matter of Wilson,* 128 Idaho 161, 164, 911 P.2d 754, 757 (1996).

#### B. Substantial And Competent Evidence Existed To Support The Commission's Finding That Tupper Did Not Suffer An Injury Caused By An Accident Arising Out Of And In The Course Of Her Employment.

In order to be entitled to worker's compensation benefits for an injury caused by an accident, a claimant must prove he or she suffered an "accident" arising out of and in the course of his or her employment. An "accident" is defined as

an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury.

I.C. § 72–102(17)(b) (Supp.1998).

In the present case, Tupper stipulated that she had been having intermittent pain in her left shoulder and upper back for two years before she sought medical attention for her condition. She further stipulated that she did "not allege that she suffered a specific accident and injury as defined by the Idaho Worker's Compensation Act, that being that she did not suffer from a specific unexpected, untoward event which can be localized as to time when it occurs or place where it occurred." Tupper stipulated that she experienced a "gradual onset of symptoms" which she eventually mentioned during a wellness exam with her family practitioner.

Tupper relies on *Brooks v. Standard Fire Ins. Co.,* 117 Idaho 1066, 793 P.2d 1238 (1990), to support her argument that she suffered a compensable accident. She argues that her situation is similar to that of Brooks who Tupper claims was awarded compensation because he was able to identify a period of time during which he was injured even though he could not identify a specific untoward event. In *Brooks,* the claimant had previously fractured his right wrist. After it healed and the cast was removed, Brooks, who worked as a truck driver, testified that several times during the course of loading and unloading trucks, he experienced severe, sharp pain in his right wrist. *Id.* at 1067–68, 793 P.2d at 1239–40. It was later determined by expert testimony that Brooks had reinjured the wrist as a result of a series of stress fractures or "micro traumas." This Court held these "micro traumas" constituted an "accident" pursuant to I.C. § 72–102(14)(b) (current version at I.C. § 72–102(17)(b) (Supp.1998)), under the facts of that case. 117 Idaho at 1069–70, 793 P.2d at 1241–42.

Tupper's reliance on this case is misplaced. The Court has twice clarified its holding in *Brooks* with respect to whether a series of small traumas constitutes an accident. In *Nelson v. Ponsness–Warren Idgas Enter.,* 126 Idaho 129, 879 P.2d 592 (1994), Nelson was diagnosed with carpal tunnel syndrome in 1980, but refused corrective surgery. Her condition worsened after beginning a job with Ponsness–Warren in 1988, where she was required to tighten screws repetitively, thus twisting and turning her hands continually. Nelson finally consented to surgery in 1989. *Id.* at 130, 879 P.2d at 593. The Commission found that Nelson's employment with Ponsness–Warren had aggravated her preexisting condition of carpal tunnel syn-

drome and that such aggravation was compensable as an occupational disease. *Id.* This Court reversed the Commission's ruling that Nelson suffered from an occupational disease, but affirmed the ruling that Nelson suffered an aggravation of her preexisting condition. *Id.* at 131–32, 879 P.2d at 594–95. The Court held, however, that in order to be entitled to worker's compensation benefits, Nelson would have to prove that the aggravation of the carpal tunnel syndrome was precipitated by an "accident." *Id.* at 132, 879 P.2d at 595. The Court disagreed with Nelson that her case fell within the holding of *Brooks,* 117 Idaho at 1066, 793 P.2d at 1238:

> Although we found in *Brooks* that the claimant had suffered an accident, we do not hereby endorse the theory that a series of mini-traumas constitutes an accident. Unless a claimant seeking compensation for the aggravation of a preexisting condition proves that an accident as defined in I.C. § 72–102(15)(b) [1989], aggravated the preexisting condition, as Nelson has failed to do in this case, the claimant is not entitled to compensation.

> Therefore, we hold that since Nelson's injury cannot be attributed to an accident reasonably located as to time when and place where it occurred, the aggravation of Nelson's carpal tunnel syndrome is not compensable.

*Nelson,* 126 Idaho at 133, 879 P.2d at 596.

In *Langley v. State,* 126 Idaho 781, 890 P.2d 732 (1995), the claimant injured his knee while working as a welder in 1987. His doctor recommended surgery, but Langley refused it. Langley continued to have knee problems. In 1990, his doctor again recommended surgery to which Langley finally agreed. *Id.* at 783, 890 P.2d at 734. In ruling on Langley's claim for worker's compensation benefits, the Commission found that Langley had failed to prove that the aggravation of his knee injury from repetitive bending and twisting motions constituted an industrial accident within the meaning of I.C. § 72–102(15)(b) (current version at I.C. § 72–102(17)(b)(Supp.1998)). *Id.* This Court affirmed, and further explained *Brooks:*

In *Brooks,* the claimant provided medical testimony that he suffered a *new* injury after the old injury healed. In addition, the claimant provided medical testimony that the new injury was the result of a series of small stress fractures that occurred while unloading freight.

. . .

The facts in the present appeal are more analogous to those in *Nelson* than *Brooks.* Like the claimant in *Nelson,* and unlike the claimant in *Brooks,* Langley did not provide any expert medical opinion evidence connecting his injured condition to a post–1987 mishap or event. To the contrary, Dr. Rudd expressly stated that Langley never described any specific event in sufficient enough detail to enable Dr. Rudd to ascribe Langley's torn cartilage to a particular event. Under the circumstances here, aggravation of Langley's existing injury was *not* an unexpected, undesigned, unlooked for mishap or untoward event. It was a predictable, albeit unfortunate, consequence of not having the damage repaired earlier.

126 Idaho at 786, 890 P.2d at 737. Thus, the Court concluded that the Commission's finding was supported by substantial and competent evidence and would not be disturbed on appeal. *Id.*

In the present case, while Tupper's doctor opined that the underlying pain and exacerbation of pain were work related, the doctor did not provide any medical evidence connecting the aggravation of Tupper's condition to an unexpected, undesigned and unlooked for mishap or untoward event, reasonably identifiable as to the time when and the place where it occurred. Thus, unlike the claimant in *Brooks,* Tupper did not suffer an accident as her doctor did not provide any medical testimony that a *new* accident occurred after a prior injury due to an accident had healed. Like the claimants in *Nelson* and *Langley,* Tupper could not prove that a specific event had aggravated a preexisting injury. We therefore hold that the Commission's finding that Tupper did not suffer an "injury" caused by an "accident" as defined by I.C. § 72–102(17) is supported by substantial and competent evidence.

## C. Substantial And Competent Evidence Exists To Support The Commission's Finding That Tupper's Claim Is Not Compensable As An Occupational Disease.

"Occupational disease" has been defined by the Idaho legislature as

a disease due to the nature of an employment in which the hazards of such disease actually exist, are characteristic of, and peculiar to the trade, occupation, process, or employment ...

I.C. § 72–102(21)(a) (Supp.1998).

A worker is entitled to benefits for an occupational disease pursuant to I.C. § 72–437:

When an employee of an employer suffers an occupational disease and is thereby disabled from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease, or dies as a result of such disease, and the disease was due to the nature of an occupation or process in which he was employed within the period previous to his disablement as hereinafter limited, the employee, or, in case of his death, his dependents shall be entitled to compensation.

I.C. § 72–437 (1989).

The term "disablement" has been defined by the Idaho legislature as

the event of an employee's becoming actually and totally incapacitated because of an occupational disease from performing his work in the last occupation in which injuriously exposed to the hazards of such disease, and "disability" means the state of being so incapacitated.

I.C. § 72–102(21)(c) (Supp.1998).

■ The Commission found that because Tupper's impairment did not actually and totally incapacitate her from performing her employment duties, she was not disabled and therefore not entitled to benefits for an occupational disease. We agree.

This Court has held that a claimant is not entitled to benefits for an occupational disease unless that person is " 'totally incapacitated from performing the work tasks that brought about the incapacity.' " *Kitchen v.*

*Tidyman Foods,* 130 Idaho 1, 3, 936 P.2d 199, 201 (1997) (quoting *Blang v. Liberty Northwest Ins. Corp.,* 125 Idaho 275, 278, 869 P.2d 1370, 1373 (1994)); *see also Jones v. Morrison–Knudsen Co., Inc.,* 98 Idaho 458, 462, 567 P.2d 3, 7 (1977) (when the statutes defining "disablement" and the right to compensation for an occupational disease are construed together, they mean that "a claimant can receive no compensation for an occupational disease unless he is totally incapacitated ... from performing his work in the last occupation in which [he was] injuriously exposed to the hazards of such disease ....")(quoting I.C. § 72–102(17)(c) (current version at I.C. § 72–102(21)(c)(Supp.1998))). Because Tupper stipulated that she missed no time from work, and was able to continue to work with the use of a telephone headset, Tupper was never "totally incapacitated." Thus, the Commission's findings that Tupper was not disabled within the meaning of I.C. §§ 72–102(21) (Supp.1998) and 72–437, and therefore not entitled to benefits for an occupational disease, are supported by substantial and competent evidence and are affirmed.

## D. Tupper's Rights To Equal Protection Under The Law Guaranteed By Art. I, §§ 2 And 13 Of The Idaho Constitution And The Fourteenth Amendment To The United States Constitution Have Not Been Violated By The Application Of I.C. §§ 72–102(21) (Supp.1998) and 72–437.

■ Preliminarily, we note that the respondents argue that Tupper's equal protection claim is not properly before the Court as she raises the issue for the first time on appeal. Ordinarily, this Court will not address such issues for the first time on appeal. *Buffington v. Potlatch Corp.,* 125 Idaho 837, 840, 875 P.2d 934, 936 (1994) (citing *George W. Watkins Family v. Messenger,* 118 Idaho 537, 541, 797 P.2d 1385, 1389 (1990)). However, in the present case, because the Commission does not have jurisdiction to address such constitutional challenges, Tupper properly raised the issue before this Court on appeal. *See Brock v. City of Boise,* 95 Idaho 630, 632, 516 P.2d 189, 191 (1973) *overruled*

*in part on other grounds by Deonier v. Pub. Employee Retirement Bd.,* 114 Idaho 721, 728, 760 P.2d 1137, 1144 (1988) ("The constitutionality of a provision connected with the Workmen's Compensation Act may properly be raised for the first time on appeal."); *Wanke v. Ziebarth Constr. Co.,* 69 Idaho 64, 75, 202 P.2d 384, 391 (1949) ("[T]he constitutionality of any part or provision of the Workmen's Compensation Law may be raised for the first time on appeal, where no prejudice will be suffered by the adverse party, *Cole v. Fruitland Canning Ass'n,* 64 Idaho 505, 134 P.2d 603 [1943], as in the case at bar."). Therefore, we address the merits of Tupper's claim.

■ Tupper claims she was denied equal protection because of the differing consequences of "disablement" under the Idaho worker's compensation laws. To qualify for worker's compensation benefits for an *injury* caused by an accident pursuant to I.C. § 72–102(17)(b), a claimant need not be totally disabled, *i.e.,* a person may receive benefits even if that person continues to work and is still able to perform all of the tasks the job requires. On the other hand, to be entitled to worker's compensation benefits for an *occupational disease* pursuant to I.C. § 72–102(21) (Supp.1998) and § 72–437, a claimant must be totally disabled, *i.e.,* unable to continue with the required job tasks. Tupper argues that such a distinction has no justification in the Idaho worker's compensation laws, and therefore violates constitutional provisions guaranteeing equal protection under the law. We disagree.

This Court has held that when a legislative act is constitutionally challenged, it will generally be presumed that such act is constitutional, and that the party challenging the statute bears the burden of establishing unconstitutionality. *Rhodes v. Indus. Comm'n,* 125 Idaho 139, 142, 868 P.2d 467, 470 (1993); *Sellmer v. Ruen,* 115 Idaho 700, 701, 769 P.2d 577, 578 (1989) ("A duly enacted statute carries with it a presumption of its constitutionality."). The Court has also held that our inquiry is not concerned "with the accuracy as to the legislative finding, but only with the question of whether it so lacks any reason-

able basis as to be arbitrary." *Sellmer,* 115 Idaho at 701, 769 P.2d at 578.

■ In the present case, the challenged statutes must be tested under the rational basis test of equal protection review since they create "no suspect or invidiously discriminatory classification" and implicate "no fundamental right," but rather involve "economic and social welfare legislation." *Rhodes,* 125 Idaho at 142, 868 P.2d at 470; *Heese v. A & T Trucking,* 102 Idaho 598, 600, 635 P.2d 962, 964 (1981). The statutes "must bear a rational relationship to a legitimate legislative purpose." *Rhodes,* 125 Idaho at 142, 868 P.2d at 470. It is well-established that the purpose of the worker's compensation law is to provide "sure and certain relief for injured workmen and their families and dependents." *Davaz v. Priest River Glass Co., Inc.,* 125 Idaho 333, 337, 870 P.2d 1292, 1296 (1994). Thus, this Court must determine whether there is a rational relationship between the legitimate legislative purpose of Idaho's worker's compensation laws to foster sure and certain relief for injured workers and their families, and requiring that an injured worker suffering from an occupational disease be totally disabled before benefits are allowed, while allowing benefits to an injured worker who suffers a work-related accident even if that person is not disabled. We hold that I.C. § 72–102(21) (Supp.1998) and I.C. § 72–437 withstand scrutiny under this test.

Upon a review of I.C. § 72–437, it is clear that in enacting this statute, the Idaho legislature intended to compensate workers who contract occupational diseases even though such afflictions were not caused by an industrial accident. In addition to compensating workers for injuries caused by accidents, the legislature also desired to compensate for occupational diseases as long as certain conditions were met. Thus, the legislature concluded that before a worker would be entitled to benefits for an occupational disease, the worker must establish that he or she is disabled from performing job tasks. I.C. § 72–437; *see Kitchen,* 130 Idaho at 1, 936 P.2d at 199. In enacting I.C. §§ 72–102(21) (Supp. 1998) and 72–437, the legislature evidently believed it necessary to differentiate between

 

the manner in which injuries caused by accidents and occupational diseases are compensated. Tupper has failed to meet her burden of demonstrating that this legislative classification fails the rational basis test, and why the Court should not defer to legislative judgment in enacting the challenged provisions. Thus, we hold that the statutes bear a rational relationship to the legitimate legislative purpose to foster sure and certain relief for injured workers and their families, and are thus constitutional.

### E. Respondents Are Not Entitled To Attorney Fees On Appeal.

State Farm and its surety, respondent State Farm & Casualty Company, claim that they are entitled to an award of attorney fees as a sanction against Tupper because her appeal is not well grounded in fact, warranted by existing law, or does not present a good faith argument for the extension, modification or reversal of an existing law. Respondents further argue that they are entitled to attorney fees because Tupper inappropriately attempted to raise a constitutional issue for the first time on appeal. Respondents rely on I.A.R. 11.1 and 41. Although I.A.R. 41 sets forth the procedure for awarding attorney fees on appeal, it does not itself provide authority to award fees under the present circumstances. *Swanson v. Kraft, Inc.*, 116 Idaho 315, 322, 775 P.2d 629, 636 (1989). This Court is empowered to award fees under I.A.R. 11.1 where the conditions specified in that rule exist, justifying the imposition of a sanction. *See, e.g., Talbot v. Ames Constr.*, 127 Idaho 648, 904 P.2d 560 (1995).

We decline to award attorney fees as a sanction under I.A.R. 11.1. As to Tupper's arguments relating to the denial of compensation based upon the facts of her case, we do not believe that her arguments were made in bad faith nor were interposed for any improper purpose, such as harassment. Furthermore, respondents are not entitled to fees under I.A.R. 11.1 with respect to Tupper's constitutional challenge on appeal because as we held above, such an issue may be raised for the first time on appeal as the Commission has no jurisdiction to decide it.

### IV.

### CONCLUSION

The decision and order of the Commission are affirmed denying worker's compensation benefits to Tupper. No attorney fees are awarded on appeal. Costs are awarded on appeal to respondents.

TROUT, C.J., and JOHNSON, SCHROEDER and WALTERS, JJ., concur.