# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49171

| | | |
|---|---|---|
| RICHARD NELSON, | ) | |
| | ) | |
| Claimant-Respondent, | ) | Boise, February 2022 Term |
| | ) | |
| v. | ) | Opinion filed: April 29, 2022 |
| | ) | |
| CITY OF POCATELLO, | ) | Melanie Gagnepain, Clerk |
| Self-Insured Employer, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u>.

Bowen & Bailey, LLP, Boise, for Appellant. Michael McPeek argued.

Racine Olson, PLLP, Pocatello, for Respondent. Rachel Miller argued.

_____

MOELLER, Justice.

Following a 21-year career as a firefighter with the City of Pocatello ("the City"), Richard Nelson was diagnosed with leukemia. Nelson brought a workers' compensation claim against the City. The Industrial Commission determined that the City failed to rebut a statutory presumption of causation with substantial and competent evidence. The City appeals the Industrial Commission's factual findings and conclusions of law. It argues there was substantial evidence to rebut the presumption that Nelson's cancer was caused by his employment. The City also argues that Idaho Code section 72-438(14)(b), which is the source of the presumption the Industrial Commission applied, unconstitutionally discriminates between the employers of firefighters who have cancer and the employers of other employees who claim to have contracted an occupational disease. For the following reasons, we affirm the Industrial Commission.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Richard Nelson was a firefighter for 21 years, working for the City from 1993 to 2014. In his career as a firefighter, Nelson was promoted through a series of positions, becoming a First Class Firefighter in 1995, a Driver/Operator in 2005, and Captain in the Fire Prevention and Public Education Division in 2011. He was actively involved in fire prevention and investigation for 18 years, from 1993 to 2011, and retired as a firefighter in 2014.

In November 2018, Nelson was diagnosed with early-stage chronic lymphocytic leukemia ("CLL"). He notified his employer the same month and timely submitted a workers' compensation claim for his medical benefits. The CLL was not revealed during any initial employment medical screening examinations with the City of Pocatello, nor was the diagnosis made more than ten years following Nelson's promotion to Captain or his retirement as a firefighter. Additionally, Nelson and his family have not habitually used tobacco products for ten or more years prior to Nelson's CLL diagnosis. Altogether, these stipulated facts led the Industrial Commission and parties to agree that Nelson's CLL diagnosis qualifies for the presumption in Idaho Code section 72-438(14)(b) that "[the] disease shall be presumed to be proximately caused by [his] . . . employment as a firefighter." I.C. § 72-438(14)(b).

The City sought to rebut this statutory presumption with the report and testimony of Robert E. Burdick, M.D. Dr. Burdick's report discussed studies and statistics concerning the association between CLL and firefighting. He explained:

> As these 6 summary studies show, time after time, no matter how the medical literature is massaged, the data just does not support a premise that firefighting significantly increases the risk of CLL on a more probable than not basis. It is also my opinion that in those few studies in the older literature where an increase was seen, the increase was an aberration usually observed when too few patients are included in the analysis.

Based on this analysis, Dr. Burdick concluded that "the absence in the medical literature of a medically probable link between firefighting and CLL," meant "a physician cannot conclude with medical probability that Mr. Nelson's CLL is causally related, on a more probable than not basis, to toxins he may have been exposed to during his employment for the city of Pocatello as a firefighter."

While there was no evidentiary hearing in this case, the parties deposed Dr. Burdick on March 8, 2021. In his deposition, Dr. Burdick explained that CLL is an overgrowth of lymphocytes

2

within the bone marrow. Nelson's CLL diagnosis was discovered early enough to place it in the lowest "Rai classification";[1] thus, it did not require immediate treatment. On cross-examination, Dr. Burdick conceded that no one could truly say what caused Nelson's CLL:

> Q. All right. Let me read from your report so I get it correct and I don't misstate it. I believe you say that a physician cannot conclude with medical probability that Mr. Nelson's CLL is causally related on a more probable basis than not to toxins that he may have been exposed to during his employment with the City of Pocatello as a firefighter.
>
> Is it fair to say that, no one can say what caused Mr. Nelson's CLL?
>
> A. That's accurate.
>
> Q. All right. So you cannot say with a reasonable degree of medical certainty what is the cause of [Nelson's CLL]; is that accurate?
>
> A. That's accurate.

Dr. Burdick also testified concerning his report, medical study statistics connecting cancer to potential causes, and medical research indicating radon as a general cause of CLL.

The Industrial Commission concluded that the City "failed to produce substantial affirmative evidence" to rebut the statutory presumption of causation because it "failed to produce affirmative medical evidence that [Nelson's] cancer was caused by something other than his employment." The Industrial Commission also concluded that Idaho's firefighter presumption law, enacted in 2016, was unambiguous; it plainly requires the Commission "to presume, unless there is 'substantial evidence to the contrary', [sic] that a claimant's disease was proximately caused by his employment as a firefighter." This, the Commission concluded, the City failed to do.

Following the Industrial Commission's decision, the City filed a motion to make the Commission's findings and conclusions immediately appealable to the Idaho Supreme Court. Nelson did not object to the motion, and the Commission granted it. The City then timely appealed to this Court.

## II. STANDARD OF REVIEW

The standard of review for appeals from the Industrial Commission is two-fold: (1) while this Court freely reviews the Commission's legal conclusions, (2) we "will not disturb the

---

[1] The "Rai classification" or "Rai Staging" is a staging system for determining the spread of cancer. It is useful in guiding treatment, determining prognosis, and ascertaining the risks for patients with chronic lymphocytic leukemia (CLL).

Commission's factual findings so long as they are supported by substantial and competent evidence." *Page v. McCain Foods, Inc.*, 155 Idaho 755, 760, 316 P.3d 671, 676 (2014).

"Constitutional issues and the construction and application of legislative acts are pure questions of law over which this Court exercises free review." *Struhs v. Prot. Techs., Inc.*, 133 Idaho 715, 718, 992 P.2d 164, 167 (1999). *See also Politte v. Dep't of Transp.*, 126 Idaho 270, 272, 882 P.2d 437, 439 (1994). "It is generally presumed that legislative acts are constitutional, that the state legislature has acted within its constitutional powers, and any doubt concerning interpretation of a statute is to be resolved in favor of that which will render the statute constitutional." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990). The party asserting a statute's unconstitutionality "bears the burden of showing [the statute's] invalidity and must overcome a strong presumption of validity." *Id.* This Court exercises its judicial power "to declare legislative action invalid upon constitutional grounds . . . only in clear cases." *Gomersall v. St. Luke's Reg'l Med. Ctr., Ltd.*, 168 Idaho 308, 314, 483 P.3d 365, 371 (2021).

### III. ANALYSIS

The key issue before the Industrial Commission was whether the City produced substantial evidence to rebut the presumption that Nelson's cancer was caused by his employment as a firefighter. The Industrial Commission determined that the City failed to rebut that presumption pursuant to Idaho Code sections 72-438(b) and (c). On appeal, the City raises questions concerning the statute's constitutionality for the first time, maintaining, "the Idaho Supreme Court is the proper forum for contesting the constitutionality of a statutory provision of the Idaho Workers' Compensation law." (citing *Tupper v. State Farm Ins.*, 131 Idaho 724, 729, 963 P.2d 1161, 1166 (1998)). Generally, this Court does not address constitutional claims made for the first time on appeal. *Gordon v. Hedrick*, 159 Idaho 604, 612, 364 P.3d 951, 959 (2015); *Tupper v. State Farm Ins.*, 131 Idaho 724, 729, 963 P.2d 1161, 1166 (1998). However, "because the [Industrial] Commission does not have jurisdiction to address [] constitutional challenges," a party may properly raise such issues before this Court on appeal. *See Tupper*, 131 Idaho at 729, 963 P.2d at 1166. Accordingly, we will consider the City's argument on the statute's constitutionality.

#### A. Idaho Code sections 72-438(14)(b) and (c) are constitutional.

The City first argues on appeal that "the presumption of causation under 72-438(l4)(b) in firefighter cancer cases, and the standard in Idaho Code § 72-438(14)(c) for overcoming the

4

presumption, both deny [it] equal protection of the law under art. l § 2 of the Idaho Constitution and the Fourteenth Amendment to the United States Constitution." The City contends that these statutory provisions carve out a classification for the employers of firefighters with cancers enumerated in the workers' compensation laws, which is distinct from the employers of employees contracting other occupational diseases under Idaho law. While the City concedes this classification does not qualify for strict-scrutiny analysis under either state or federal equal protection analysis, it argues the statutory classification qualifies for the Idaho Supreme Court's "means-focus test." Nelson counters that the means-focus test is inapplicable here because the statutory classification created by Idaho Code sections 72-438(l4)(b) and (c) can only qualify for rational basis review, and it does not violate either the U.S. or Idaho Constitutions. We agree with Nelson's analysis.

When addressing equal protection claims, we apply a three-step analysis: "(1) identifying the classification under attack; (2) identifying the level of scrutiny under which the classification will be examined; and (3) determining whether the applicable standard has been satisfied." *Gomersall v. St. Luke's Reg'l Med. Ctr., Ltd.*, 168 Idaho 308, 318, 483 P.3d 365, 375 (2021) (citing *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 395, 987 P.2d 300, 307 (1999)). If the claims arise under the U.S. Constitution, we implement one of "three levels of scrutiny: strict scrutiny, intermediate scrutiny, [or] rational basis." *Id.* This Court employs similar levels of scrutiny when analyzing equal protection challenges under the Idaho Constitution; however, intermediate scrutiny is replaced by the means-focus test. *Id.* Thus, when addressing the constitutionality of a statute under the Idaho Constitution, we apply the following tests:

> Where the classification is based on a suspect classification or involves a fundamental right we have employed the "strict scrutiny" test. Where "the discriminatory character of a challenged statutory classification is apparent on its face and where there is also a patent indication of a lack of relationship between the classification and the declared purpose of the statute," the "means-focus" test is applicable. In other cases the "rational basis" test is employed.

*Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 710, 791 P.2d 1285, 1289 (1990) (quoting *Johnson v. Sunshine Mining Co.*, 106 Idaho 866, 870, 684 P.2d 268, 271 (1984)).

The parties agree that strict scrutiny does not apply under the United States or Idaho constitutions because neither a suspect class nor a fundamental right are involved in this case. However, the parties dispute whether Idaho's "means-focus" test or a rational basis test applies,

and whether the appropriate test is satisfied. While the City alleges a violation of the Fourteenth Amendment's rational basis standard, it does so without any accompanying arguments. There is no other mention of the U.S. Constitution or federal case law in that portion of the City's briefing and analysis. Thus, the City's challenge is grounded solely on the Idaho Constitution. We will address each step of our equal protection analysis in turn.

### 1. *The classification under attack.*

In 2016, the Legislature passed H.B. 554 to amend the workers' compensation laws regarding occupational diseases in an effort "to provide a presumption of proximate causation between specified diseases and employment as a firefighter," as well as to provide compensation "payable for disability or death resulting from certain firefighter occupational diseases."[2] H.B. 554, S.L. 2016, ch. 276, § 2. The statute at issue in this case states in full:

> Compensation shall be payable for disability or death of an employee resulting from the following occupational diseases: . . .
>
> (14) Firefighter occupational diseases:
>
>> (a) As used in this subsection, "firefighter" means an employee whose primary duty is that of extinguishing or investigating fires as part of a fire district, fire department or fire brigade.
>>
>> (b) If a firefighter is diagnosed with one (1) or more of the following diseases after the period of employment indicated in subparagraphs (i) through (xi) of this paragraph, and the disease was not revealed during an initial employment medical screening examination that was performed according to such standards and conditions as may be established at the sole discretion of the governing board having authority over a given fire district, fire department, or fire brigade, then the disease shall be presumed to be proximately caused by the firefighter's employment as a firefighter: . . .

---

[2] In the aftermath of the September 11, 2001, attacks in New York City and Washington, D.C., many states took legislative steps to recognize the difficulties firefighters and first responders face in proving work-related cancers by creating presumptions of causation in their workers' compensation statutes. *See* Anthony J. Macauley, *Recent Developments in Workers' Compensation Law*, 39 TORT TRIAL & INS. PRAC. L.J. 779, 781–82 (2004) (noting a rising national trend among the states to increase workers' compensation coverage for safety officers and volunteers following 9/11, including the creation of statutory presumptions); Lawrence D. Tarr & Salvatore Lupica, Workers' Compensation, 39 U. RICH. L. REV. 475, 509 (2004) ("Catastrophic events, such as natural disasters and the tragic and unnerving events of September 11, 2001, have already catalyzed debate and change as seen in last year's legislation attempting to clarify murky issues as to coverage for some of those whose work puts them on the frontline."). As of the date of this opinion, 49 states, including Idaho, have adopted statutory presumptions of occupational diseases for firefighters. IAFF Presumptive Health Initiative, *State Presumptive Disability Chart* (Apr. 12, 2021), https://www.iaff.org/wp-content/uploads/Presumptive_Disability_Chart_as_of_4-12-2021.pdf (last visited April 28, 2022).

(vi) Leukemia after five (5) years;

. . .

(c) The presumption created in this subsection may be overcome by substantial evidence to the contrary. If the presumption is overcome by substantial evidence, then the firefighter or the beneficiaries must prove that the firefighter's disease was caused by his or her duties of employment.

(d) The presumption created in this subsection shall not preclude a firefighter from demonstrating a causal connection between employment and disease or injury by a preponderance of evidence before the Idaho industrial commission.

(e) The presumption created in this subsection shall not apply to any specified disease diagnosed more than ten (10) years following the last date on which the firefighter actually worked as a firefighter as defined in paragraph (a) of this subsection. Nor shall the presumption apply if a firefighter or a firefighter's cohabitant has regularly and habitually used tobacco products for ten (10) or more years prior to the diagnosis.

I.C. § 72-438(14).

Specifically at issue in this equal protection challenge are subsections (14)(b) and (c), which permit employers of firefighters with one of the enumerated cancers to rebut the statutory presumption of causation by submitting "substantial evidence to the contrary." I.C. § 72-438(14)(c). Nelson, having been diagnosed with CLL, based his claim on section 72-438(14)(b)(vi), which mentions leukemia. Thus, the classification here is based on occupation, employment, and disease. The classification creates a distinction under Idaho law between the employers of firefighters with cancers enumerated in the workers' compensation laws, and employers of employees engaged in different work who contract occupational diseases.

### 2. *The means-focus test does not apply to the statute in question.*

With the parties in agreement that strict scrutiny is inapplicable to this case, either Idaho's means-focus test or the rational basis test must apply to the alleged unconstitutional discrimination. The City contends the classification here requires the means-focus test, but argues that the statute fails to satisfy either the means-focus or rational basis tests.

The means-focus test is applicable if two conditions are met: (1) "[w]here the discriminatory character of a challenged statutory classification is apparent on its face and [(2)] where there is also a patent indication of a lack of relationship between the classification and the declared purpose of the statute[.]" *Gomersall*, 168 Idaho at 318, 483 P.3d at 375 (quoting *Olsen*, 117 Idaho at 710, 791 P.2d at 1289). Thus, "[t]he means-focus equal protection analysis requires

7

a determination of whether different treatment is accorded to persons on the basis of criteria wholly unrelated to the objective of the statute." *State v. Beam*, 115 Idaho 208, 212, 766 P.2d 678, 682 (1988) (citations and internal quotations omitted).

We conclude that neither prong of the means-focus test has been met. Addressing the first prong, there is no apparent discriminatory character or motive attributable to this classification. The distinction between classes under Idaho Code section 72-438(14)(c) is employers of firefighters with cancer and the employers of other employees with occupational diseases. While the employers of firefighters are subject to different evidentiary standards, the statutory presumption is not intended to punish such employers; rather, the presumption protects firefighters as an occupational class at greater risk of contracting cancers due to the nature of their work. Neither the text of section 72-438, its legislative history, nor common sense suggests that the presumption was created to unlawfully discriminate against those who employ firefighters.

Second, there is no "lack of a relationship between the classification and the declared purpose of the statute." The legislative history behind Idaho Code section 72-438(14)(c) is both thorough and clear. The Statement of Purpose provides:

> This bill addresses the nearly impossible burden of proving occupational diseases associated with firefighting within the workers compensation system. Research has established that firefighters are significantly more likely to develop certain types of cancer than the general population. Under current law, the burden of proof for these known occupational diseases is nearly impossible to overcome as exposures are chronic, occur over long periods of time, and are uncertain regarding specific toxins and carcinogens present at any given structure fire. This bill would change existing workers compensation law so that it would be presumed that such diseases were occupationally related unless medical evidence showed otherwise.

Statement of Purpose, RS24515C, H.B. 554 (2016). As part of the appellate record, Nelson also included a two-hour recording from the 2016 Legislature's debates and materials concerning the adoption of this firefighter presumption. The content of this hearing included the following testimony:

- Firefighters are first responders that cannot know what environments and toxins they will be exposed to when responding to a fire. They can be exposed to any number of hazardous materials in addition to smoke and fumes.

- "It is estimated that between 2% and 8% of all cancers are attributable to occupational exposures," and firefighters are "routinely exposed to mixtures of chemical substances" contained in fire smoke and building debris. Medical studies

8

of groups of firefighters, while varied, indicate a statistically significant increased risk of firefighters to develop the bill's listed cancers, with the exception of breast cancer.

- "Fire smoke is a complex mixture of cancer-causing chemicals from combustion of all the various products in modern fires." Studies have revealed that firefighters are often exposed to many chemicals that are known carcinogens, including, but not limited to, asbestos, benzene, formaldehyde, diesel-engine exhaust, and soot. Cancers develop over time and from multiple exposures. Different cancers have different latency periods, and, thus, have the different time periods assigned to the bill's enumerated cancers. The challenges of (1) the lack of exposure assessments and (2) firefighters' general better health than the rest of the population leads to possible underestimation of true risk in statistical and medical studies. As a result, indications from studies that firefighters have a potential increased risk of cancer may still be underestimating their true risk of developing or dying from cancer. As of 2016, over 30 states have passed legislation to create a presumption of causation of cancer from firefighting.

- The Professional Firefighters of Idaho vetted the bill's policy with the Industrial Commission.

- Richard Owens, an attorney representing injured workers, explained that without this legislation, an injured firefighter would have to gather detailed information about the number of times the firefighter was exposed to the chemical or toxin that caused his cancer. This includes proving what specific toxin the firefighter was exposed to, where they were, how many times exposure occurred to that particular toxin, and when each exposure occurred over the years of firefighting. Then the worker must also prove that causation, i.e., that those particular toxin exposures caused his cancer. Owens stated: "That doesn't mean that these cases are difficult; it means that these cases are impossible."

Idaho Legislature Audio/Video Archive, House Commerce & Human Resources Committee Meeting (March 3, 2016, 1:30 PM), complete audio download available at https://insession.idaho.gov/IIS/2016/House/Committee/Commerce%20&%20Human%20Resources/160303_hcom_0130PM-Meeting.mp4 (last visited April 28, 2022).

This legislative background manifests a clear "relationship between the classification and the declared purpose of the statute." *Gomersall*, 168 Idaho at 318, 483 P.3d at 375 (quoting *Olsen*, 117 Idaho at 710, 791 P.2d at 1289). Creating this classification of employers of firefighters with cancer was a part of the Legislature's effort to create new evidentiary burdens and procedures that protect firefighters from the difficult hurdles of proving the causation of their cancer diagnoses. Importantly, the statute creates a *rebuttable* presumption. Employers of firefighters—whether public or private—can shift the evidentiary burden back to a claimant upon showing substantial

evidence that a claimant's cancer was not caused by his occupation. Altogether, these statutory classifications and criteria are both nondiscriminatory and wholly related to the statute's objective.

### 3. *The rational basis test applies here.*

Rational basis is the applicable standard where the means-focus and strict scrutiny tests do not apply. *Gomersall*, 168 Idaho at 319, 483 P.3d at 376; *Olsen*, 117 Idaho at 710, 791 P.2d at 1289. In applying the rational basis test, it makes no difference whether the classification is challenged under the U.S. Constitution or the Idaho Constitution, for the test is the same: "Under either the Fourteenth Amendment or the Idaho Constitution, a classification will survive rational basis analysis if the classification is rationally related to a legitimate governmental purpose." *Gomersall*, 168 Idaho at 319, 483 P.3d at 376 (quoting *Meisner v. Potlatch Corp.*, 131 Idaho 258, 262, 954 P.2d 676, 680 (1998)). "This Court will not evaluate the fairness or efficacy of the statute that is being challenged." *Id.* (quoting *McLean v. Maverik Country Stores, Inc.*, 142 Idaho 810, 814, 135 P.3d 756, 760 (2006). Furthermore, the rational basis standard is "generally employ[ed] . . . when examining statutes concerning economic interests." *Id.*

Here, the statutory presumption created by section 72-438(14)(b) addresses economic and societal policy interests as it concerns employment and occupation for a class of employees determined to face unique risks: firefighters. Such concerns have traditionally been reviewed under a rational basis analysis. *See id.* Likewise, because neither the means-focus nor strict scrutiny standards apply to the classification at issue, we must apply the rational basis test and next determine whether the test is satisfied. *See id.*

### 4. *The protections afforded firefighters in Idaho Code sections 72-438(14)(b) and (c) satisfy the rational basis test.*

Rational basis review only requires us to determine whether "there is any conceivable state of facts which will support [the statutory provision]," without judging "the wisdom or fairness of the legislation being challenged." *Gomersall*, 168 Idaho at 319, 483 P.3d at 376 (internal quotations omitted); *Coghlan*, 133 Idaho at 396, 987 P.2d at 308. Thus, "[u]nder the rational basis test, a classification will pass scrutiny if it is rationally related to a legitimate governmental purpose." *Gomersall*, 168 Idaho at 320, 483 P.3d at 377 (citing *Meisner*, 131 Idaho at 262, 954 P.2d at 680).

10

Here, the challenged legislation is a statute that protects firefighters who develop cancer by providing a presumption of causation for the enumerated occupational disease, making it easier for them to qualify for workers' compensation benefits. The 2016 Legislature amended Idaho's occupational-disease laws after hearing considerable evidence that firefighters have an increased risk in contracting certain types of cancer and a difficult burden to prove causation for workers' compensation under the then-existing laws. This evidence consisted of: medical studies indicating a correlation between firefighting and cancer; testimony regarding the complex chemicals and known carcinogens firefighters are regularly and often unknowingly exposed to as they respond to fires in wild, rural, urban, and industrial settings; testimony from a physician and an epidemiologist on the medical studies and statistics; the prior status of the workers' compensation laws and difficulties firefighters face in trying to prove causation for occupational-disease compensation; and the unlikelihood that the legislation would raise workers' compensation costs. We conclude that there is ample evidence and facts in the legislative record to support the legislation's purpose and will not second-guess the Legislature's policy choices.

Therefore, we conclude that the rational basis test applies and is satisfied by the facts of this case. Accordingly, Idaho Code section 72-438(14)(c) does not violate the City of Pocatello's equal-protection rights.

**B. The Industrial Commission correctly determined that the City failed to present "substantial evidence to the contrary" to rebut the presumption that Nelson's cancer was caused by his occupation as a firefighter.**

The parties do not dispute that Nelson's CLL qualifies for a rebuttable presumption of causation as enumerated in Idaho Code section 72-438(14)(b). Instead, the parties argue whether the City presented substantial evidence to rebut the statutory presumption of causation. The City argues the "Commission misapplied the law to the facts in determining that [its] evidence was legally insufficient to satisfy the 'substantial evidence to the contrary['] standard," while Nelson contends the City failed to present affirmative evidence that Nelson's CLL had a non-occupational cause. The Industrial Commission concluded "substantial evidence to the contrary" requires more than just challenging the factual basis of the statutory presumption itself; rather, the employer must present "affirmative medical evidence that . . . there is a non-work-related cause that is a substantial factor in causing the cancer." We affirm the Commission's conclusion.

11

Idaho's workers' compensation laws contain numerous provisions governing compensation for occupational diseases. Applicable to this case is Idaho Code section 72-438(14)(b), which states:

> If a firefighter is diagnosed with one (1) or more of the following diseases after the period of employment indicated in subparagraphs (i) through (xi) of this paragraph, and the disease was not revealed during an initial employment medical screening examination that was performed according to such standards and conditions as may be established at the sole discretion of the governing board having authority over a given fire district, fire department, or fire brigade, then the disease shall be presumed to be proximately caused by the firefighter's employment as a firefighter.

Leukemia is one of the listed occupational diseases presumed to be caused "after five (5) years" of employment as a firefighter. I.C. § 72-438(14)(b)(vi). This statutory presumption can only apply where the specified disease is diagnosed within "ten (10) years following the last date on which the firefighter actually worked as a firefighter." I.C. § 72-438(14)(e). The presumption may not apply where "a firefighter or a firefighter's cohabitant has regularly and habitually used tobacco products for ten (10) or more years prior to the diagnosis." *Id.* Idaho Code section 72-438(14)(c) establishes an opportunity to rebut this presumption: "The presumption created in this subsection may be overcome *by substantial evidence to the contrar*y. If the presumption is overcome by substantial evidence, then the firefighter or the beneficiaries must prove that the firefighter's disease was caused by his or her duties of employment." (Emphasis added.)

Like "substantial evidence," "substantial evidence to the contrary" does not have to amount to a preponderance, but it must be "such relevant evidence as a reasonable mind might accept to support a conclusion[.]" *Evans v. Hara's, Inc.*, 123 Idaho 473, 478, 849 P.2d 934, 939 (1993); *Seamans v. Maaco Auto Painting & Bodyworks*, 128 Idaho 747, 753, 918 P.2d 1192, 1198 (1996). The plain reading of "contrary" suggests that an employer must overcome the statutory presumption by presenting substantial evidence contradicting the presumption that an individual claimant's cancer was caused by his work as a firefighter. In other words, there must be affirmative evidence that the claimant's cancer was caused by something other than the occupation of firefighting.

Such an application of Idaho Code section 72-438(14)(c) corresponds with this Court's prior interpretations of "substantial evidence to the contrary." While this Court has never interpreted Idaho Code section 72-438(14)(c), it has examined identical language to that at issue

here. For instance, Idaho Code section 72-228 provides a rebuttable presumption of causation in certain claims for workers' compensation. It states:

> In any claim for compensation, where the employee has been killed, or is physically or mentally unable to testify, and where there is unrebutted prima facie evidence that indicates that the injury arose in the course of employment, *it shall be presumed, in the absence of substantial evidence to the contrary*, that the injury arose out of the employment and that sufficient notice of the accident causing the injury has been given.

I.C. § 72-228 (emphasis added). There are a few cases that have directly interpreted this "substantial evidence to the contrary" language.

First, in *Hatley v. Lewiston Grain Growers, Inc.*, the Court examined a statutory presumption that "in the absence of substantial evidence to the contrary, . . . the injury or death [of employee] was not occasioned by the employee's intoxication . . . ." 97 Idaho 719, 722, 552 P.2d 482, 485 (1976) (citing I.C. § 72-208 (1976) and I.C. § 72-228). The *Hatley* Court determined the workers' compensation statutes required the "employer relying on the intoxication defense to come forth with substantial affirmative evidence showing that the employee was intoxicated at the time of death and also that the intoxication proximately resulted in the injury." *Id.* An identical approach was followed in *Evans v. Hara's, Inc.* There, the Court interpreted Idaho Code section 72-228's "substantial evidence to the contrary" language as requiring an employer to "come forward with substantial affirmative evidence" that indicated "the accident did not arise out of the employment." 123 Idaho at 478, 849 P.2d at 939. Once established, the Court explained, "the burden shifts back to the employee to persuade the Commission that it did indeed arise out of the employment."

Likewise, in *Politte v. Dept. of Transp.*, this Court reviewed the Commission's application of the statutory presumption in Idaho Code section 72-228 as it concerned medical evidence. 126 Idaho at 272, 882 P.2d at 439. In *Politte*, the claimant had suffered a stroke that left him partially paralyzed and "unable to testify" within the meaning of Idaho Code section 72-228. *Id.* at 271, 882 P.2d at 438. The Commission found the claimant was entitled to the presumption that his stroke arose in the course of his employment. *Id.* The employer attempted to rebut this presumption with the following evidence: first, it presented credible testimony from the claimant's supervisors that there was no causal connection between the claimant's stroke and his work; second, the employer provided a letter from a cardiovascular surgeon who stated the claimant's stroke had no relation to his employment and that there were other "risk factors" in his history, including hypertension,

13

hypercholesterolemia, hypertriglyceridemia, and elevated blood sugar. *Id.* The Commission ultimately concluded that the supervisors, while credible, did not provide proof of a medical nature. The Commission also concluded that the surgeon's letter failed to present substantial evidence to the contrary because the foundation for his opinion was unknown. *Id.*

On appeal, this Court affirmed the Commission's order, determining that the employer failed to provide substantial and affirmative medical evidence contrary to the presumption that the claimant's injury arose from his employment. *Id.* at 272–73, 882 P.2d at 439–40. Regarding the surgeon's letter, the Court agreed that there was no foundation for the opinion. The Court explained: "There is no verification in the evidence presented to the Commission that the medical records contained in these exhibits were the medical records the surgeon received from the claims examiner. This raises serious questions concerning what records the surgeon used to arrive at the opinion contained in the letter." *Id.* The Court also agreed with the Commission that testimony from the claimant's supervisors was insufficient, for "[t]he causal relationship of an injury to the claimant's employment must be supported by at least some *medical* proof." *Id.* at 273, 882 P.2d 437, 440 (emphasis added).

While these cases vary somewhat in facts and circumstances, the *Hatley* interpretation has been consistently applied: "substantial evidence to the contrary" means "substantial affirmative evidence" contrary to the presumption. *Politte*, 126 Idaho at 272–73, 882 P.2d at 439–40; *Evans*, 123 Idaho at 478, 849 P.2d at 939; *Hatley*, 97 Idaho at 722, 552 P.2d at 485. *Politte* further established that an employer must rebut the presumption of causation with medical proof. 126 Idaho at 273, 882 P.2d 437, 440. Because the presumption here is that the claimant's cancer was caused by his employment as a firefighter, the employer would have to present substantial and affirmative medical evidence that the claimant's cancer was *not* caused by his employment.

Here, the City presented evidence from Dr. Burdick, an oncologist and medical expert who opined that Nelson's cancer was not caused by firefighting. However, Dr. Burdick's foundation for his report was solely based on evidence that firefighting, in general, does not significantly increase the risk of cancer on a more-probable-than-not basis. In other words, Dr. Burdick's report sought to rebut the presumption not by showing an *alternate cause* for Nelson's CLL, but by attacking *the evidentiary foundation for the underlying the presumption contained in the statute*. The report states: "time after time, no matter how the medical literature is massaged, the data just

14

does not support a premise that *firefighting* significantly increases the risk of CLL on a more probable than not basis." (Emphasis added.) While Dr. Burdick gives one potential cause of CLL—radon in the Pocatello area—he does not offer any affirmative evidence suggesting that Nelson was exposed to radon or that his CLL was actually caused by radon. Indeed, the doctor conceded in both his report and deposition that there is no way to know what actually caused Nelson's CLL, be it ambient exposure to radon, exposures to toxins while firefighting, or otherwise:

> Q. [Counsel for the Industrial Commission]: Is it fair to say that, no one can say what caused Mr. Nelson's CLL?
>
> A. [Dr. Nelson]: That's accurate.
>
> Q. All right. So you cannot say with a reasonable degree of medical certainty what is the cause of [Nelson's CLL]; is that accurate?
>
> A. That's accurate.

Even if Dr. Burdick disagrees with the Legislature's conclusion that medical studies support a causal connection between firefighting and cancer, an expert witness cannot unilaterally overcome a legislatively enacted presumption simply by offering a contrary opinion. To do so would essentially permit Dr. Burdick, through his testimony, to strike down a legislative enactment on evidentiary grounds. Instead, Dr. Burdick should have directed his research and testimony towards Nelson's CLL and offered proof of an alternative cause for it. Ultimately, the City's evidence appears to only challenge the statutory presumption itself, rather than rebut the presumption that Nelson's cancer was caused by his employment. Although Dr. Burdick's report generally disputes the validity of the legislatively enacted premise that firefighting increases the risk of developing cancer, he failed to establish that Nelson's cancer was caused by something other than firefighting. Such a course must be rejected by this Court, for we do not judge "the wisdom or efficacy" of a challenged statute. *Gomersall*, 168 Idaho at 319, 483 P.3d at 376. As this Court has long held: "[t]he wisdom of such legislation is with the Legislature, and not with the court." *Smallwood v. Jeter*, 42 Idaho 169, 244 P. 149, 155 (1926). Importantly, Dr. Burdick's deposition illustrates the exact evidentiary difficulty the Legislature was concerned with: that firefighters could almost never prove in court that their cancer was caused by their employment.

As noted in the International Association of Fire Fighters' amicus brief, most jurisdictions have rejected challenges to their rebuttable presumptions enacted to protect firefighters and other first responders. This includes rejections to constitutional challenges on equal protection grounds.

15

*See*, *e.g.*, *Moes v. City of St. Paul*, 402 N.W.2d 520, 525 (Minn. 1987). Likewise, other state appellate courts have long rejected similar attempts by employers to disprove the underlying premise of a legislatively created presumption, rather than rebutting the presumption as it applies to a specific claimant. *See*, *e.g.*, *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 20 (Alaska 2014) ("rebuttal evidence must be personal to the claimant, not evidence attempting to undermine the legislature's determination that the enumerated diseases are occupational diseases of firefighters."); *City of Frederick v. Shankle*, 785 A.2d 749, 755 (Md. 2001) ("What is not permitted is for an expert to deny or contradict the presumption altogether, simply because the expert does not agree with the basis for it."); *Robertson v. N. Dakota Workers Comp. Bureau*, 616 N.W.2d 844, 855 (N.D. 2000) (" . . . the effect of the presumption would be defeated if it could be rebutted by expert medical opinion generally denying the validity of the legislatively enacted premise that work stress causes heart problems."); *Cunningham v. City of Manchester Fire Dep't*, 525 A.2d 714, 720 (N.H. 1987) ("[The doctor's] testimony went no further than to question the wisdom of the legislature, without producing evidence of non-work-related causes of Young's arteriosclerosis. This type of testimony is insufficient to rebut the presumption."); *Sperbeck v. Dep't of Indus., Lab. & Hum. Rels.*, 174 N.W.2d 546, 549 (Wis. 1970) ("Evidence which only attacks the rationale of the statute, without exposing the cause of death of a particular claimant, does nothing more than question the wisdom of the legislature.").

It is clear from the plain reading of the statute that the Legislature intended to create a rebuttable presumption that firefighters diagnosed with certain types of cancer qualify for workers' compensation benefits as a result of their contracting a disease proximately caused by their employment. Even in the light of conflicting medical evidence and studies, the Idaho Legislature resolved the issue in favor of Idaho's firefighters. By adopting this statutory presumption, the Idaho Legislature recognized the unique dangers facing these crucial first responders and the importance of firefighters in our communities. As noted frequently throughout the legislative materials, firefighters risk consistent exposure to unknown toxins and hazards, which, the Legislature reasonably concluded, could result in the development of certain cancers—diseases that can rarely be pinned down to a specific cause. Therefore, they determined that the burden should no longer be on the firefighters to prove their occupation caused the cancer, but on the employer to prove substantial evidence to the contrary. Thus, Idaho Code section 72-438(14)(c),

16

much like Idaho Code section 72-228, requires an employer to present substantial affirmative medical proof supporting a non-work-related cause. This the City failed to do.

The City cites *Est. of Aikele v. City of Blackfoot* to contend that "the Court should apply a different standard to the determination of 'substantial evidence to the contrary' for purposes of Idaho Code § 72-438(14)(c) than the interpretation it gave to the presumption at issue in *Evans*." *Aikele* is a workers' compensation case that dealt with a firefighter failing to prove the causation of his lung cancer, and it precedes the current legislation at issue. *Est. of Aikele v. City of Blackfoot*, 160 Idaho 903, 906–07, 382 P.3d 352, 355–56 (2016). In that case, the Industrial Commission denied a firefighter workers' compensation benefits based on disputed factual findings between the medical experts, including a meta-analysis of 32 studies on cancer risk in firefighters. *Id.* at 907, 909–11, 382 P.3d at 356, 358–60. The Court ultimately upheld the Commission's factual findings as reasonable and supported by the record. *Id.* at 911, 382 P.3d at 360. The Court also determined: "The meta-analysis, which concluded no similar association exists between firefighting and lung cancer, is the most comprehensive body of information available in the record. Thus, the Commission's consideration of a risk analysis was appropriate under the circumstances." *Id.* at 909, 382 P.3d at 358.

The City argues this language and holding from *Aikele* requires the Court to conclude that "testimony of a physician" opposing the "conclusion that a firefighter's cancer was caused by his or her employment should be treated as competent evidence to rebut the presumption of causation." *Aikele*, however, is inapplicable here because it predates Idaho Code section 72-438(14). Thus, there was no rebuttable presumption shifting the burden to the employer. That case concerned whether a firefighter proved it was more probable than not his cancer was caused by his employment, not whether his employer presented substantial evidence to rebut a presumption the employment caused the cancer. Even the standards of review differ. In *Aikele*, the Court was reviewing disputed factual findings to determine whether the Commission clearly erred; however, in this case, the Court freely reviews whether the Commission correctly applied the statutory presumption in Idaho Code section 72-438(14)(c). Thus, while *Aikele* suggests that research data can be a foundation for a medical expert's opinion regarding a particular claimant, it does not support an employer's attempt to generally attack the statutory presumption of causation for all firefighters set forth in section 72-438(14)(c).

17

Therefore, we affirm the Industrial Commission's findings of fact and conclusions of law. The Commission correctly determined that the City failed to present substantial evidence contrary to the presumption that Nelson's CLL was caused by his occupation as a firefighter.

### C. Nelson is entitled to attorney fees.

Nelson argues on appeal that he is entitled to attorney fees pursuant to Idaho Code section 72-804, which permits punitive costs in certain cases. It states, in pertinent part: "If the commission or any court before whom any proceedings are brought under this law determines that the employer . . . contested a claim for compensation made by an injured employee . . . without reasonable ground, . . . the employer shall pay reasonable attorney fees in addition to the compensation provided by this law." I.C. § 72-804.

We agree that Nelson is entitled to attorney fees under this statute. The City's arguments were little more than an attack on the policy behind the 2016 legislation under the guise of a first-impression constitutional challenge. As noted, such an assault on similar legislation has found no traction anywhere else it has been attempted. The City did not present reasonable grounds to challenge the legislature's authority to create such a presumption; rather, it merely sought to second-guess and undermine the scientific basis of the statutory presumption itself. Likewise, there was no serious attempt to show that the presumption did not apply to Nelson. Therefore, we award attorney fees to Nelson as the injured claimant.

## IV. CONCLUSION

Based on the foregoing reasons, we hold that Idaho Code sections 72-438(14)(b) and (c) are constitutional. Further, we affirm the Industrial Commission's determination that the City failed to present "substantial evidence to the contrary" to rebut the presumption that Nelson's CLL was caused by his occupation as a firefighter. We award attorney fees to Nelson pursuant to Idaho Code section 72-804.  As the prevailing party, Nelson is also entitled to an award of costs pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, Justices BRODY, STEGNER and ZAHN **CONCUR.**

18